W. C. BARBER, Appellee, v. CITY DRUG STORE et al., Appellants.

**INTOXICATING LIQUORS:** Injunction—Evidence—Sufficiency.
1    Evidence reviewed, and *held* that the successive and repeated sales of intoxicating liquors shown justified the finding that such sales were illegal.

**INTOXICATING LIQUORS:** Injunction—Control of Premises—Evidence—Sufficiency.
2    dence—Sufficiency. Evidence reviewed and *held* insufficient to establish defendant's ownership, control or occupancy of the premises in question.

**EVIDENCE:** Conclusions—Telephone Communication—Identity of
3    Person. While the mere fact that a witness cannot positively identify the person with whom he had a talk over the telephone is not sufficient to exclude what was said, yet, on *de novo* hearing, there must be some identification beyond what the party said, with whom the talk was had.

**APPEAL AND ERROR:** Decisions Reviewable—Appeal by Legal
4    Nonentity. An appeal (assuming such to be possible) by or in the name of that which is simply a naked trade name will not be reviewed on appeal.

**INTOXICATING LIQUORS:** Injunction—Appeal—Reversal—Effect
5    on Non-Appellant. The reversal of a decree enjoining the sale of intoxicating liquors on the appeal of one defendant, in no wise affects a like decree in the same case against another defendant who does not appeal, there being evidence to sustain such latter decree.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

SATURDAY, JANUARY 22, 1916.

THE trial court found that a nuisance, created by the illegal sale of intoxicating liquors, existed on certain premises owned by the defendant Conkling. It ordered the abatement

of the nuisance, and a closing of the building, and decreed that the defendants, City Drug Store and Kucharo, be permanently enjoined and restrained from keeping and maintaining said nuisance, or any other like nuisance, either in said building or elsewhere in the judicial district. The defendants, other than Conkling, appeal.—*Reversed* in part, and *Affirmed* in part.

*Stipp, Perry & Starzinger,* for appellants.

*M. S. Odle,* for appellee.

SALINGER, J.—I. We agree with the appellant that there has been no change in statute since *State v. Findley,* 45 Iowa 435, was decided, which affects the authority of that decision.

1. INTOXICATING LIQUORS: injunction: evidence: sufficiency.

(Compare Sections 1523, 1542 and 1554, Code of 1873, with Section 2382, Code Sup., 1913.) But we do not agree that the case at bar is ruled by the *Findley* decision. It reverses a conviction for selling liquor in violation of law. That it does so rightly is made manifest by the following statement made in it:

"There was no evidence tending to show that defendant knew of this sale, or that he kept intoxicating liquor for sale, or that there was any such in his possession or kept by him for any purpose. It is true the witness sold in defendant's store, a half-pint of whiskey to Walker, but for aught that appears the witness may have brought it there in his pocket; the evidence fails to show there was ever any other liquor in defendant's store or building than that sold by the witness to Walker. It is true that, if intoxicating liquor is found in the possession of the accused in any place except his private dwelling house, it is presumptive evidence such liquor was kept or held for sale contrary to law. . . . But there was no evidence tending to show that there was any such liquor in the defendant's possession or under his control."

This is perfect reasoning, in a case where the sole evidence

was the sale of a half pint of whiskey containing cinchona; but can it be applied to this case wherein it is shown that there were at least four illegal sales to different persons made during some range· of time, to wit, about October 23, 1913, and on March 29, April 3 and April 14, 1914? To hold that *Findley's* case rules here is to disregard the probative effect of repetition and the cumulative effect of recurrence in negativing coincidence, accident or lack of knowledge. One single sale of a small quantity of liquor sold by one employed to sell drugs might so readily occur without the knowledge, or the direct or implied consent, of the employer as that, where no more appears, a conviction requiring his knowledge and consent should be set aside. But every added sale is evidence, increasing in weight cumulatively with each repetition, that the owner of the store did know and consent. Say that one single sale affords no proof of either active or passive consent on his part, would that be so if a dozen sales a day were made to all comers for a period of six months? The supposed case and the one at bar exhibit no difference except in degree of proof—and *Findley's* case differs from both in that way only, and such difference must control the applicability of fact decisions, save in the very few instances where the facts in two cases are identical. All of which establishes, for the purposes of the present decision that, while the evidence is not as strong as in the supposed case, it is so much stronger than that in *Findley's* case as that we should sustain here.a finding that liquor was illegally sold, though such a finding was rightly set aside in that case. So holding but applies the principle of the decisions that allow *scienter* to be shown by the doing of acts like unto the one in inquiry, and the reasoning of making title by adverse possession—that one who owns property would not suffer another to claim it for years and remain silent.

What we have said makes plain what consideration the citations which appellee urges to be controlling are entitled to. *Stromert v. Johnson*, 144 Iowa 682, is so much stronger in

its facts as that we should reverse, were it not followed on facts substantially like those it has; though we affirmed the denial of a conviction where the record was no stronger than that in *Findley's* case. But while this is so, this attitude toward the *Stromert* case is an argument why we should affirm here, though the reversal in *Findley's* case is right. *Dudley v. Sautbine*, 49 Iowa 650, is inconsistent with neither *Findley's* case nor our instant holding. It affirms no more than that, where one puts an agent in charge of a saloon, the principal cannot escape liability for sales made to persons in the habit of becoming drunk, even though he has expressly forbidden such agent to sell to such persons. We conclude that someone made illegal sales in the premises enjoined and in the drug store which it is alleged that defendant Kucharo then owned and controlled.

II. But to sustain the decree against appellant Kucharo, there must, in addition, be evidence that, during the period in which sales were made, or at least at the times of several of the said sales, he was, as the complainant

2. INTOXICATING LIQUORS: injunction: control of premises: evidence: sufficiency.

charges, "engaged in the sale" of what was sold; was the owner of the liquor sold or other liquor sold on the premises; kept liquor there "with intent to sell the same as a beverage upon said premises in violation of law", and was "the occupier of said premises". It will not suffice that someone is guilty as charged, and did what is charged from October 22, 1913, on to and including April 14, 1914, and that appellant Kucharo at some time became the owner of the store in which these things were done. What is there to sustain the allegation that appellant became owner, occupier or controller as early as, or earlier than, April 14, 1914?—the vital question. All of it follows:

The appellant testifies that he now owns this drug store; that, prior to April 15, 1914, he worked for the City Drug Store and had no interest whatever in the place; that he bought it sometime after April 15th,—cannot recall the exact

time when he took over the place, but is sure that it was after April 15th. He adds that he never kept or sold intoxicating liquor in the place. Appellant's brother Gus states that appellant came to Des Moines on December 27, 1913, and stayed until he bought the place of Gus and one Eagan; that Gus and Eagan, in partnership, owned this store from sometime in January until about April 4, 1914; that Eagan then sold and Gus kept on until the latter part of April, 1914; that appellant did not work for them during this period, and that Gus was at no time during same in employ of appellant; that he sold to appellant but does not remember the date, except that it was after the latter part of April. Were this all, it could hardly be claimed that the allegations of the complaint charging ownership and control between October, 1913, and up to and including April 14, 1914, are sustained. What more is there?

2.

Allbright, a witness for plaintiff, says, in chief, that he leased the place to "what is known as the City Drug Store Company" and does not know what that is or who composes it; that he leased it, "since about the middle of January, 1914"—all of which is no evidence that Otto Kucharo leased then or ever. Witness adds that "in the beginning", the deal of witness was with Richard Kucharo, to which he adds, "I am collecting rent from Otto Kucharo." As it is conceded that Otto now owns the store, it is not very material that he is now paying the rent. Witness says further that he leased to Richard "up to January", but that, in December, 1913, Richard moved out and left the store empty; also that Richard was (apparently when he had left the store empty) "operating the place and paying the rent"; that Richard had a lease and "there was no other person aside from him who had the place at that time"—the time being once more left either unidentified or in unextricable confusion. It is not unnatural that witness attempted to clarify himself on cross-examination. He begins with saying that counsel who exam-

ined him in chief had "misstated my testimony as to the leas-
ing of the property after the first of the year", and he explains
that he does not testify that Richard's lease "was terminated
sometime in January"; that he means he "had negotiations
with Richard for the leasing of that place sometime in Jan-
uary, 1914,"—which may mean either that the negotiations
were had then or that the negotiations were with reference
to having a lease begin then. He concludes by saying: "I
only knew that sometime later than January, 1914, Otto
Kucharo paid me rent. I know Otto paid the last check for
rent. I am not sure whether Otto or one of the others paid
the others." The utmost this comes to is a confused and vague
statement that a brother of appellant leased the store at some
time earlier than December, 1913, and that, at some time later
than January, 1914, appellant paid rent. It is no evidence
that appellant either owned, controlled or occupied this store
from October 22, 1913, to April 14, 1914, inclusive.

3.

There is evidence that Richard wanted left blank the
name of the tenant when lease was drawn, giving as a reason
"that he did not know what the name of the company would
be and thought that perhaps one of his brothers might rent the
place." It seems that one brother, Gus, "who was round the
store in and out", when Richard had it, did rent it, or take
it over from Richard. He took it "quite awhile" after
Richard moved in December, 1913, and he and one Eagan
owned it as partners. On the dissolution of the partnership,
about April 4, 1914, Gus became the sole owner and con-
tinued so until "the latter part of April, 1914". He sold
to appellant "the latter part of April"; he was paid no cash,
there was no agreement or bill of sale and the buyer "just
took over the indebtedness". That this proves that some of
appellant's brothers changed in and out as quickly and with
as much lack of clear lines of change as characterizes the
shifting of glass in a kaleidoscope, and that all of it raises some

doubt whether appellant ever did become owner of this store, may be conceded. But just how does that help appellee, who must establish that appellant did become such owner? Were his brothers impleaded and attempting to evade responsibility with claiming that they had sold to appellant, it would be logical for appellee to emphasize any weakness in the proof that title had changed. By doing so here, appellee merely points out that his claim that appellant is the owner of the store is not well supported. Everything that tends to prove that someone else is, also proves that appellant is not, the owner, which appellee must show him to be.

### 4.

While appellant says that he does not remember it, we will assume that ''before this action was started, along during the winter in March'', Mr. Odle, over the telephone, ''called for this man, the defendant, Otto Kucharo, at the drug store''; that Odle says that Kucharo answered and talked with him and said that he was the operator of the place. Assume this is evidence, does it remain so in view of the admission of Mr. Odle that he does not know appellant personally, nor know his voice, and that he cannot swear that the man who answered was appellant? It is true that we held in Conkling v. Standard Oil Co., 138 Iowa 596, at 602, that the mere fact that the witness could not positively identify the one who talked with him, should not exclude the talk from the jury as matter of law where, as is expressly pointed out, there was corroboration as to who was talked with. But here is no case of lack in positiveness in identification, but one of no identification and of no corroboration. The naked statement that the talker is a named person, where the witness knows neither the man nor his voice, is a naked conclusion without the exhibition of one fact for its basis—with all basis negatived; and here is not even the question, is there enough so that a jury may pass on whether there is sufficient identifi-

3. EVIDENCE: conclusions: telephone communication: identity of person.

cation, but whether we shall give the alleged talk weight as evidence in a *de novo* hearing. We have never gone so far as that, and should not. Both reason and authority sustain our declining to do so. *Murphy v. Jack,* (N. Y.) 36 N. E. 882, and *Vaughn v. State,* (Ala.) 30 So. 669, are express holdings that a telephone communication is not admissible where the witness does not know the speaker nor recognize his voice.

5.

It seems that appellant, happening to be going into the city about the time one of his brothers opened this drug store, he was given money to pay for establishing a telephone connection for this store and did some signing to get this done. The phone was not put in his name. We are unable to see how thus acting as a volunteer messenger for his brother proves, or tends to prove, that appellant either owned, controlled or occupied the store during the period here involved.

III. The appellant, City Drug Store, if a legal entity, did have some connection with this store at some of the times at which said sales were made, and is thus to be differentiated from appellant Kucharo. But we should not

**4. APPEAL AND ERROR: decisions reviewable: appeal by legal nonentity.** pass upon the evidence against it. There is no evidence that it is either a partnership, firm or corporation; and it seems to be mutually conceded that it is no legal entity—is a mere trade name. If this be so, the decree appealed from by it, if we assume it can appeal, is of no efficacy. It is no function of the machinery of this court to do what can have no effect. We leave the decree against this appellant as we find it.

IV. The petition alleges that defendant Conkling owns and controls the premises and that the things charged have been and will be done thereon "with the knowledge of the aforesaid owner". The owner does not

**5. INTOXICATING LIQUORS: injunction: appeal: reversal: effect on nonappellant.** appeal, and we have no jurisdiction as to her, either to affirm or reverse. But we must consider whether she takes any benefits of necessity from what we do with the appeal of

Kucharo. We hold that she takes no benefits therefrom, because there is testimony against her which sustains the decree in so far as it affects her. She is shown to have owned the premises when said sales were made therein. That there was a failure of proof as to Kucharo does not affect the testimony against Conkling. This record affords no room for the rule under which those not appealing take under those who appeal successfully. As to Otto A. Kucharo, the decree appealed from is reversed. It is left unaffected in every other respect. *Reversed* in part and *Affirmed* in part.

EVANS, C. J., LADD and GAYNOR, JJ., concur.