STATE OF IOWA, Appellee, v. ROLLIE WILBOURN, Appellant.

No. 42487.

DECEMBER 11, 1934.

G. C. Dalton and R. W. Cockshoot, for appellant.

Edward L. O'Connor, Attorney-general, and Walter F. Maley, Assistant Attorney-general, for appellee.

KINTZINGER, J.— The indictment filed against defendant is as follows:

"The Grand Jurors of Cass County * * * accuse Rollie Wilbourn of the crime of malicious threats to extort and charge that * * * Rollie Wilbourn * * * did unlawfully and maliciously do injury to * * * T. T. Saunders with intent to extort money from * * * said Saunders. And to compel said Saunders by

threat and injury to pay over to one Chris Christensen a sum of money against the will of said Saunders. On or about February 6, 1933, in the Town of Anita, Cass County, Iowa, and *did then and there extort the said money from* \* \* \* *the said Saunders by force and by threats."* (Italics ours.)

The indictment is based upon section 13164 of the Code. which is as follows:

"Malicious threats to extort. If any person, either verbally or by any written or printed communication, maliciously threaten to accuse another of a crime or offense, or to do any injury to the person or property of another, with intent to extort any money or pecuniary advantage \* \* \*, or to compel the person so threatened to do any act against his will, he shall be imprisoned" etc.

Defendant filed a demurrer to the indictment, which was overruled by the court. The case was then tried to a jury. At the conclusion of the trial, defendant moved for a directed verdict. This motion was overruled, and the case submitted to the jury, resulting in a conviction, from which defendant appeals.

I. It is contended that the court erred in overruling the demurrer because (1) the indictment does not charge the defendant with threatening *to accuse Saunders of any crime or offense,* and (2) because it contains no charge that the defendant *threatened to do injury to Saunders with intent to extort money* or pecuniary gain, and (3) because it contains no charge that the defendant *threatened to compel Saunders to do any act against his will.*

It has been held that section 13164 defines more than one separate offense. State v. Young, 26 Iowa 122; State v. McGlasson, . 88 Iowa 667, 56 N. W. 293; State v. Debolt, 104 Iowa 105, 73 N. W. 499; State v. Essex, 217 Iowa 157, 250 N. W. 895. It has also been held that it is proper to charge the commission of the crime in any one or all of the methods defined by statute. State v. Browning, 153 Iowa 37, 133 N. W. 330; State v. Essex, supra.

It is claimed that none of the offenses defined by this statute are charged in the indictment. It is true that the indictment does not charge that the *defendant threatened to accuse another of a crime,* but the failure of the indictment to make this accusation is not fatal, if it includes any other offense defined by the statute. It is contended by appellee that it does substantially charge the defendant with threatening to do injury, and charges him with hav-

ing done injury to one Saunders, *with intent to extort a payment of money from him;* it also charges the defendant with threatening to compel Saunders to pay over a sum of money to one Christensen, against Saunders' will, *and that he did extort said money from Saunders by force and by threat.*

Section 13732-c2 provides that:

"The indictment * * * is valid and sufficient if it charges, the offense * * * in one or more of the following ways:

"1. By using the name given to the offense by statute.

"2. By stating so much of the * * * offense, * * * in terms of the * * * statute defining the offense, *or in terms of substantially the same meaning,* as is sufficient to give the court and the accused notice of what offense is intended to be charged." (Italics ours.)

Section 13732-c3 provides that no indictment charging an offense in accordance with section 13732-c2 shall be held insufficient because it fails to state the particulars of the offense.

While the language used in the indictment does not state the offense in the exact terms of the statute, and while it may not be a model of correctness, it does (1) use the name given to the offense by statute, and (2) it does *in terms of substantially the same meaning* charge the unlawful and malicious threats of injury to Saunders with intent to extort money from him, and to compel him, by threats, to pay over to one Christensen a sum of money against his will.

Appellant relies upon State v. Goldenberg, 211 Iowa 234, 233 N. W. 66, and State v. Essex, supra, as supporting his contention that the indictment fails to accuse him of any of the charges defined by statute. An analysis of these cases shows that appellant's contention is not supported thereby. In State v. Goldenberg, supra, the indictment was held not sufficient because it failed to state *the name of the party* to whom the threats to extort were made. In State v. Essex, supra, one of the offenses submitted to the jury was not contained in the indictment.

It is clear from a reading of the indictment in this case that it does substantially charge the offense of threatening to do injury to the person of T. T. Saunders with the intent to extort money from him, and that he was compelled by threats to pay over money against his will. As such acts are included in the offenses set out and defined by section 13164, the indictment must be held good.

State v. Essex, supra. It can hardly be claimed, from a reading of the indictment, that the appellant was not sufficiently informed of the offense charged against him. This conclusion has support in the following cases: State v. Schuling, 216 Iowa 1425, 250 N. W. 588; State v. Harness, 214 Iowa 160, 238 N. W. 430; State v. Solberg, 214 Iowa 333, 242 N. W. 84; Deemy v. Dist. Court of Dallas County, 215 Iowa 690, 246 N. W. 833; State v. Engler, 217 Iowa 138, 251 N. W. 88.

II. It is next claimed that the court erred in overruling defendant's motion for a directed verdict on the ground that there was not sufficient evidence to show that any threats were made by the defendant to extort money from the prosecuting witness. The prosecuting witness, Saunders, was the owner of a farm leased to a man named Christensen. Litigation between the landlord, Saunders, and the tenant, Christensen, over farm matters, was pending in a justice court at Anita. The case had been set for trial on February 6, 1933. The evidence also tends to show that between 50 and 100 farmers of that community took sides with the tenant in that litigation, and came to Anita on the day set for trial. The evidence shows when the farmers arrived at Anita, the defendant, Wilbourn, called at the office of the justice of the peace, before whom the case was pending, and was advised that the case had been postponed. This information was conveyed to the farmers, who had come to attend the trial. The evidence tends to show that thereupon the defendant and a number of these farmers attempted to call upon Mr. Saunders at the hotel in Anita, for the purpose of forcing a settlement of the lawsuit. Saunders testifies that he saw the defendant on Main street; that he had no conversation with him there, but went to the hotel. He said that "on going into the hotel Mr. Wilbourn said he wanted to see me and was hollering at me. Two other men were with Wilbourn and came into the hotel"; that at that time Wilbourn grabbed him by the shoulder and said, "God damn you, we want you". The two other men were with him when he said that. The evidence also tends to show that, when Saunders went into the hotel, there was a crowd of people in the street in front of the hotel. Saunders says that one of the other men also grabbed him, and that Mrs. Clark, who ran the hotel, intervened and told him to let Saunders alone. Saunders further says that he then started up stairs and "Wilbourn grabbed me by the shoulder and said 'It is you we want.' I got loose, and two other men grabbed for me and Mrs. Clark got be-

tween us. The others cussed and swore." Saunders also said: "When I was trying to get the sheriff, they came to the back door and tried to come in." At that time Saunders grabbed a stove poker, and said: "I told them not to come in * * * and they said 'by God, we will come in'." Saunders also testified that, when Wilbourn grabbed him the first time, a button on his sleeve hit him in the eye; that his eye was injured for about three weeks. Defendant himself admitted that he laid his hands upon Saunders and told him he had better talk to these people.

Saunders further said:

"After the sheriff came *they* said they were going to make me settle with Mr. Christensen. If I did not, they were going to get me; and I objected to settling, and I said I had a right to a trial. They then said 'you aren't going to have any trial. We're going to make you settle this day.' I didn't want to settle and they were getting very rabid and said 'get a rope,' and then I said I would settle. * * * I then put the money and papers in Mr. Ziegler's hands. Mr. Ziegler was Mr. Christensen's attorney." Saunders said he thought Mr. Wilbourn was present most of the time. "There were about 75 men around there. I went to my house for the money and the sheriff went with me. The people were still in the hotel when I got back. When those people got close to me and were hollering and cussing, I was afraid. I paid the money under protest. * * * I paid the money over because I was afraid of the mob."

Mr. Ziegler, the attorney for Christensen, said there was a crowd of men in Anita the day fixed for the trial, and that Wilbourn came to his office. He testified that Wilbourn (the defendant) told him "they were going to settle it." The sheriff testified that he was called to Anita on that day and when he got there he found about 40 or 50 people up at the Clark Hotel. He was called into the hotel and afterwards went and asked the crowd to be a little more quiet.

In the determination of a motion for a directed verdict, favorable consideration must be given to the evidence offered by the state to support the charges made in the indictment. If there is a conflict in the evidence, it necessarily becomes a question for the jury. The evidence offered by the state tended to show that a large number of persons co-operated with each other for the purpose of compelling a settlement of litigation pending between Saunders and his tenant, Christensen; that the defendant, Wilbourn, was a member

of the crowd and took an active part in its actions. There is also testimony tending to show that the prosecuting witness, Saunders, was injured.

"A threat * * * need not * * * be in any particular form or in any particular words, and it may be made by innuendo or suggestion. All that is necessary is that it be definite and understandable to a mind of ordinary intelligence." 62 C. J. 933, section four. "A threat need not be in any particular form or phrase and may be expressed in very general or vague terms without indicating the precise nature of the accusation * * * or containing all of the statutory elements of the offense. * * * " 62 C. J. 933, section six.

. There is sufficient evidence in this case from which a jury could find that a large number of farmers were assembled in the vicinity of a hotel at Anita, into which Saunders had gone; that they were evidently cursing and swearing at or about Saunders; that some of the members of the crowd threatened to "get a rope". It also tended to show that such attitude was taken for the apparent purpose of compelling a settlement of the litigation between Saunders and his tenant, Christensen.

From the statements made to him, as hereinabove set out, there was sufficient evidence to go to the jury upon the charges made in the indictment. There was evidence from which the jury could find that Saunders was threatened with great bodily injury for the purpose of extortion. There was also evidence tending to show that he, in fact, was injured.

Under the law of this case, as given in instruction No. 13, to which no exception was taken, the jury was told that:

"All persons concerned in the commission of a public offense, whether they directly commit the acts constituting the offense, or aid or abet its commission must be indicted, tried and punished as principals. To aid and abet, as the term is used in said statutes, is meant to assent to an act; to lend to it countenance and approval, either by an active participation in it, or by in some manner advising or encouraging it. In this case if you find that the state has shown beyond all reasonable doubt that the offense charged in the indictment has been committed, and that it has also shown beyond all reasonable doubt that the defendant aided and abetted in the commission of this offense, this will be sufficient to justify you in finding the defendant guilty."

This instruction was not complained of, and clearly states the law. Section 12895, Code 1931. Although testimony was offered on behalf of the defendant tending to show that none of the offenses charged in the indictment were committed by him, we are constrained to hold that appellant's evidence did no more than raise a conflict in the evidence. The case was therefore properly submitted to the jury.

III. It is contended that the court erred in giving instruction No. 11 because it permitted the jury to infer that, if Saunders paid over any money on account of fear, the jury would be authorized to convict, although no threats were made to injure his person or property. Instruction No. 11 states:

"If you find that at the time in question said * * * Saunders paid any money to or for said Chris Christensen because of being in fear, and that he would not have paid the same except for being in fear, then such payment would not be a voluntary payment, and would be against his will; and under these circumstances such payment would not be a voluntary payment, and would be against the will of said T. T. Saunders, even though one or more peace officers were present at the time, and even though said T. T. Saunders owed said Chris Christensen the amount of money paid."

In construing this instruction, it must be considered in connection with instruction No. 10, to which no exception was taken. Instruction No. 10 tells the jury that:

"A threat is any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free, voluntary action which alone constitutes consent. It must be made under such circumstance as to operate, to some extent at least, on the mind of the one whom it is expected to influence."

Instruction No. 11 is merely an enlargement upon the thought expressed in instruction No. 10, and simply defines the conditions under which a payment would not be "voluntary", and that such payment might not be voluntary, although made in the presence of one or more peace officers. Instruction No. 4 tells the jury that the defendant is presumed to be innocent, and that he cannot be rightfully convicted unless all of the matters necessary to establish his guilt are shown beyond all reasonable doubt, and instruction No. 5

tells the jury that defendant cannot be convicted unless the allegations contained in the indictment have been established beyond all reasonable doubt.

We are constrained to hold that, when considered in connection with other instructions, there was no error.

IV. It is also contended that the court erred in giving instruction No. 12, as follows:

"The intent with which an act is committed, being but a mental state, direct proof of it is not required, nor can it ordinarily be shown by direct proof. Intent is a purpose formed to do or not do something, and the intent of a person in doing a thing may be inferred from the acts done, the nature and character of the acts, and from the manner in which, or the circumstances under which, they were done, as disclosed by the evidence. Every person is, in law, presumed to intend the natural and ordinary consequences and results of his own acts."

The complaint against this instruction is that the jury inferred therefrom that the defendant was bound by the statements and acts of the bystanders, and that their acts were under his direction. Instruction No. 12 clearly shows that it was simply a definition of 'the legal term "intent". The instruction is not subject to the complaint made against it.

The foregoing constitute the chief points relied upon by appellant for reversal.

Other errors, in relation to the court's ruling on the admission or rejection of evidence, are alleged. We have given them all careful consideration, and find no merit therein.

Error is also alleged because of the court's failure to fairly present, without request, the issue of defendant's defense to the jury by a proper instruction, in order that they might have an intelligent conception of the defense. No special instruction containing any particular defenses referred to were requested, and no special reasons were given why the state did not fairly present the issues to the jury. We have examined all instructions given, and are constrained to hold that they fairly presented the issues to the jury.

It is our conclusion that the case was properly submitted, and the judgment of the lower court is therefore affirmed.

STEVENS, ANDERSON, DONEGAN, ALBERT, and EVANS, JJ., concur.