**STATE of Iowa, Appellee,**

v.

**John McGINNIS, Appellant.**

**No. 57594.**

Supreme Court of Iowa.

June 30, 1976.

William A. Shuminsky, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Michael W. Coriden and Raymond Sullins, Asst. Attys. Gen., Zigmund Chwirka, County Atty., and Maynard M. Mohn, Asst. County Atty., Sioux City, for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and HARRIS, JJ.

HARRIS, Justice.

Defendant received a deferred sentence under § 789A.1, The Code, after having entered a guilty plea to delivering a controlled substance in violation of § 204.-401(1), The Code. He appeals from an order entered some ten months later revoking probation and sentencing him to 60 days in the county jail. We affirm the trial court.

The facts leading to the original charge are not in dispute and are not of importance to the questions presented in this appeal. On September 7, 1973, John McGinnis (defendant) entered a plea of guilty to a county attorney's information charging him with illegal delivery. An accommodation was found and defendant was "placed on deferred sentence with two years probation to the Bureau of Adult Corrections." On April 4, 1974 an application to revoke the deferred sentence was filed on the stated grounds defendant had made a "threatening and obscene telephone call" in violation of § 714.37, The Code. On the same date, April 4, 1974, hearing on the application for revocation was set for April 30, 1974. Notice of the hearing was given to defendant and also to Attorney William A. Shuminsky who had been appointed to represent defendant on the original charge.

At the revocation hearing Shuminksy stated he had called defendant when he received the notice. Defendant had then advised Shuminksy he was going to seek representation by a public defender and, if unable to get such help, would be represented by other counsel.

An assistant county attorney who represented the State in the application called Shuminksy on April 29 concerning the hearing. This call prompted Shuminsky again to talk with defendant. Defendant advised Shuminsky that Daniel C. Galvin would appear for him as attorney in the matter. Shuminsky came to the hearing only in order to make sure defendant had representation; Shuminksy was not prepared on the case.

Galvin had been contacted by defendant on April 13 and was told by defendant of the general allegations against him. Defendant and Galvin were apparently acquainted socially. Defendant advised Galvin that Shuminsky would not representing him but rather that he thought he would attempt to obtain public defender assistance. Galvin thought the plan acceptable

but told defendant to advise him if he were unable to secure counsel. Galvin stated his next contact with defendant was on the afternoon before the hearing, April 29, when defendant asked Galvin to appear in his behalf. Because of lack of time Galvin also appeared at the hearing unprepared.

I. Shuminsky and Galvin joined in asking for a continuance. Denial of this application is defendant's first assignment of error.

The trial court felt defendant had been negligent in failing to sooner procure a lawyer. Witnesses had traveled from out of town. It appears one came from Des Moines and another from Houston, Texas. In denying the application the trial court indicated having been called by the assistant county attorney the day before. The assistant county attorney had reported defendant would appear for the hearing and represent himself. The court had advised the assistant county attorney defendant "must have an attorney", and further indicated that such counsel had at all stages of the proceedings been available at public expense.

Rule 183(a), Rules of Civil Procedure, provides: "A continuance may be allowed *for any cause not growing out of the fault or negligence of the applicant,* which satisfies the court that substantial justice will be more nearly obtained. * * *." (Emphasis added.) Section 780.2, The Code, makes the rules of civil procedure applicable to continuances in criminal cases.

 It is well settled that granting or refusing a motion for continuance is addressed to the sound discretion of the trial court. The discretion is very broad. The trial court's ruling on a motion for continuance will be disturbed only where it appears the trial court has abused its discretion. *State v. Miller,* 229 N.W.2d 762, 771 (Iowa 1975); *State v. Cowman,* 212 N.W.2d 420, 423 (Iowa 1973) and authorities.

In *Wycoff v. State,* 226 N.W.2d 29 (Iowa 1975) we considered the effect of a late appointment of counsel in a probation revocation hearing. We cited *Orcutt v. State,* 173 N.W.2d 66 (Iowa 1969) where the assertion of lack of preparation time was extensively discussed.

*Orcutt* was a case which involved termination of a parent-child relationship. Original counsel became unable to continue representation. Substitute counsel was then appointed three days before trial. The new counsel was not able to discuss the case with the appellant (who was confined to the women's reformatory) until a few hours before the hearing. A continuance for lack of opportunity to prepare for the case was sought but overruled. In reversing we said: "It is clear that a defendant in a criminal case who goes to trial has been denied effective assistance of counsel if counsel is not given adequate opportunity to prepare for trial." 173 N.W.2d at 69.

In *Orcutt* we quoted from *Scalf v. Bennett,* 260 Iowa 393, 399, 147 N.W.2d 860, 864 (1967): " 'Effective' * * * means conscientious, meaningful representation wherein the accused is advised of his rights and honest, learned and able counsel is given a reasonable opportunity to perform the task assigned to him. (Authorities)." 173 N.W.2d at 69. See also *State v. Kendall,* 167 N.W.2d 909, 910 (Iowa 1969). In *Orcutt* we also quoted with approval from *Stirling v. State,* 38 Ariz. 120, 123, 297 P. 871, 872 (1931):

" 'His right to have counsel, and *to have his counsel prepare his case for trial * * is a substantial right, and to deny his counsel sufficient time in which to prepare his case is also the denial of a substantial right*; and, under such circumstances, to have counsel appointed to represent him *would be a meaningless formality and the granting of a barren right.*' " (Emphasis in *Orcutt.*) 173 N.W.2d at 69–70.

 The instant case bears little or no resemblance to *Orcutt.* This defendant's difficulty was entirely of his own making. He was apprised, not only by his notice, but by both counsel with whom he visited of the importance and necessity of being represented. We may assume defendant was aware of the seriousness of the hearing.

Our comments made in 1893 remain appropriate:

" * * * The application * * * is, in effect, a showing by the attorney for [defendant] that he was employed only a few minutes before the trial, and could not, with the utmost diligence and tact, prepare for the trial of the case then called. It asked for a postponement to some other day in the term. There seem to have been other counsel for [defendant], who were for some reason no longer appearing. There is no showing whatever of the diligence of [defendant] in securing counsel, or why his former counsel did not further appear. The district court said, in ruling upon the motion, that, while the attorney making the application was acting in good faith, the defendants had not evidently 'been diligent, or they could have had counsel, and ought not to put off the employment of counsel until to-day.' The court specially found that the clients had been negligent, and refused the application. The ruling was right. It was the duty of the client, as well as the attorney, to be diligent." *Maloney v. Traverse*, 87 Iowa 306, 309–310, 54 N.W. 155, 156 (1893). See *United States v. Redwitz*, 328 F.2d 395, 398 (6 Cir. 1954) (where accused knew of need for counsel for three weeks, failed to retain until preceding weekend); *State v. Hathaway*, 224 Iowa 478, 481, 276 N.W. 207, 209 (1937) (" * * * If there was failure to secure counsel prior to the time appellant did secure counsel, it was her fault and not that of someone else."); 17 Am.Jur.2d, Continuance, § 28, p. 148; 17 C.J.S. Continuances §§ 22–23, pp. 394–395; 66 A.L.R.2d 267, § 11 at 291–293; 66 A.L.R.2d 298, § 4(b) at 307–309.

The trial court's action in denying the motion for continuance was no abuse of discretion. Neither did it rise to a deprivation of constitutional rights, in view of defendant's obvious negligence in timely seeking assistance of counsel. Counsel were given adequate time after hearing to research the law and to submit briefs. Defendant has not been hampered by any lack of assertion of legal rights. In addition defendant has never disputed the factual basis for the application.

Defendant's first assignment is without merit.

II. Defendant's second assignment is the claim the trial court failed to comply with the provisions of chapter 789A, The Code, relating to revocation of deferred sentences. There is no claim of lack of due process in the giving of notice. It is clear defendant had notice of the charge upon which the revocation hearing was grounded and on that basis the State believes trial court was right in refusing to dismiss the application.

■ Defendant's claim under this assignment is that the State failed to allege or prove any violation of the terms of his probation. On appeal he argues any unwritten conditions placed on his probation would be void, citing *People v. George*, 318 Mich. 329, 28 N.W.2d 86 (1947). The claim proceeds from the absence of showing defendant had notice when he was placed on probation that he should not violate the law. We believe it is a fundamental condition of any probation, whether or not it is expressed in probation instructions, that the probationer shall not violate the law.

■ The general principles governing revocation proceedings are well settled and not seriously disputed. They were stated in a number of recent cases. *Rheuport v. State*, 238 N.W.2d 770 (Iowa 1976); *State v. Farmer*, 234 N.W.2d 89 (Iowa 1975); *State v. Hughes*, 200 N.W.2d 559 (Iowa 1972). Where violation of another criminal statute is the grounds for revocation it is not required that an actual conviction be obtained. Proof of violation need be established only by a preponderance of evidence. *Rheuport*, supra, 238 N.W.2d at 772.

■ The terms of probation were not made of record in defendant's sentencing (though he may have been provided with a written copy of those terms by the court or a probation officer). However this failure is not fatal to the proceeding. Implicit in any probation is the condition the probationer shall not violate the law: " * * * 'Good behavior' has been regarded as an

implicit condition of every order of probation." 24 C.J.S. Criminal Law, § 1571(8), p. 472. See *Munson v. State,* 242 A.2d 313, 314 (Del.Supr.1968); *State v. Chesnut,* 11 Utah 2d 142, 145, 356 P.2d 36, 38 (1960); *Marshall v. Commonwealth,* 202 Va. 217, 219, 116 S.E.2d 270, 273, (1960).

Freedom from violation of other laws is a requirement of good behavior and is inherent in allowing a person convicted of a crime to escape incarceration. There is no merit in defendant's second assignment.

III. Defendant's third assignment challenges the admission of evidence. The application to revoke defendant's probation was on the claim he had made a threatening and obscene phone call in violation of § 714.37, The Code. Kathleen Kulow, a taxpayer's representative with the Internal Revenue Service, testified she had received a call at the Des Moines IRS office. The caller stated he had not received his income tax refund. The witness testified the caller then said "You God damn people ought to be able to process returns faster than that; I filed six weeks ago."

Kulow asked for and got the caller's name (John McGinnis) and social security number. A computer read out, which was possible only if the name and number matched was performed. The read out indicated no problem with the refund. The caller, speaking in an angry and increasingly loud voice, finally demanded to speak to someone in charge.

Kulow transferred the call to Philip G. Brand, then the chief interviewer for the Des Moines IRS office. Brand testified the caller said he was John McGinnis. After Brand attempted to explain why no refund had yet been received the caller stated: "If I don't receive the refund by next Tuesday, I am going to come down to the office and punch the director in the mouth."

After additional attempts to calm the caller Brand stated the caller "indicated to me that if he didn't get it by next Tuesday, he was going to come in. His exact statement was if he didn't get [the refund] by next Tuesday, he was going to come see me personally. I asked him what he meant by

that and he said, 'You can read into it any God damn thing you want to', and I said, 'Does that include physical violence?' And he said, 'You can read into it any God damn thing you want to including physical violence.' "

An official with the telephone company testified a scan of telephone calls from the number assigned to defendant's residence indicated a call was placed to the IRS in Des Moines at the time in question.

Roger W. Wittrock, an inspector with the IRS security division, testified he talked with defendant on February 26, 1974. Defendant indicated that he had made a phone call to the IRS the preceding week.

Defendant claims it was error to receive the evidence of Kulow and Brand and to fail to strike it. He argues that, to be admissible, there must be corroboration of the caller's identity. He cites *Smith v. Farm Prop. Mut. Ins. Assn.,* 199 Iowa 693, 697, 202 N.W. 508, 510 (1925). The claim overlooks other evidence which did in fact point to defendant as the caller. We believe the evidence was properly received and was ample to establish defendant's identity.

■ " * * * [T]he mere fact the witness could not positively identify the one who talked with him should not exclude the talk from the jury as matter of law where * * * there was corroboration as to who was talked with. * * *." *Barber v. City Drug Store,* 173 Iowa 651, 657, 155 N.W. 992, 994 (1916). See *Cwach v. United States,* 212 F.2d 520, 525 (8 Cir. 1954); McCormick on Evidence (Second Ed. 1972) § 226, pp. 553–554; 7 Wigmore on Evidence (Third Ed. 1940) § 2155, pp. 616–624; 2 Jones on Evidence (Sixth Ed. 1972) § 7:33, pp. 152–156; 29 Am.Jur.2d, Evidence, § 381, pp. 432–433; 31A C.J.S. Evidence § 188, pp. 502–509. Cf. *State v. Rowley,* 198 Iowa 613, 616–617, 198 N.W. 37, 39 (1924). Under the foregoing authorities evidence of identify of the caller may be circumstantial.

■ Sufficient corroboration of the identity of defendant appears in four ways: (1)

the social security number given, (2) the fact a call was placed to the number in question from a telephone listed in defendant's name, (3) defendant's later admission of making a phone call to the Des Moines IRS office during the week in question, and (4) the caller knew facts concerning the return of John McGinnis (defendant) (i. e., the return was filed, a refund was indicated) which would tend to be peculiarly within defendant's knowledge.

We find no merit in defendant's third assignment.

IV. The application for revocation charged defendant made a "threatening and obscene telephone call." The trial court found the call was not obscene, only threatening. Defendant's final assignment challenges the finding he violated § 714.37 because of the concession the call was not also obscene.

■ Section 714.37 proscribes the unlawful use of telephones. It prohibits various types of calls including, disjunctively, threatening or obscene ones. There is no error in alleging conjunctively an offense which is statutorily disjunctive; proof of either will sustain a conviction. *Gerberding v. United States*, 471 F.2d 55, 59 (8 Cir. 1972); *State v. Bresee*, 137 Iowa 673, 114 N.W. 45 (1907); *State of Iowa v. Harris*, 11 Iowa 414 (1861); *State of Iowa v. Cooster*, 10 Iowa 453 (1860). See *Powers v. McCullough*, 258 Iowa 738, 748, 140 N.W.2d 378, 385 (1966); *State v. Hochmuth*, 256 Iowa 442, 445, 127 N.W.2d 658, 659 (1964); 41 Am.Jur.2d, Indictments and Informations, § 96, p. 939; 42 C.J.S. Indictments and Informations, § 251, p. 1268.

We may assume without deciding defendant correctly argues he could not be convicted for the threat made against the "director" but stated to Brand. See *State v. Brownlee*, 84 Iowa 473, 477–479, 51 N.W. 25, 27 (1892) (evidence failed to show defendant intended communication to be relayed to the party threatened). It nonetheless appears defendant's telephone conversation with Brand violated § 714.37.

" 'A threat * * * need not * * * be in any particular form or in any particular words, and it may be made by innuendo or suggestion. All that is necessary is that it be definite and understandable to a mind of ordinary intelligence.' * * *." *State v. Wilbourn*, 219 Iowa 120, 125, 257 N.W. 571, 574 (1934), quoting from 62 C.J. 933, § 4.

■ Threats of physical harm need not be directly expressed, but may be contained in "veiled statements" nonetheless implying injury to the recipient when viewed in all the surrounding circumstances. See *United States v. Sciolino*, 505 F.2d 586, 588 (2 Cir. 1974); *United States v. DeMet*, 486 F.2d 816, 820 (7 Cir. 1973); 31 Am.Jur.2d, Extortion, Blackmail, etc., § 14, p. 911. What is controlling is whether a recipient of the communication would interpret it as a threat of injury. See *United States v. Maisonet*, 484 F.2d 1356, 1358 (4 Cir. 1973).

■ Prior to making the "threat" against Brand defendant told Brand he was "going to come down to the office and punch the director in the mouth." After additional loud, angry swearing defendant told Brand he was going to "come and see [Brand] personally." Brand asked [defendant] what he meant and [defendant] said "You can read into it any God damn thing you want to." When asked whether it included physical violence defendant responded "You can read into it any God damn thing you want to including physical violence."

■ In view of the prior threat against the director it cannot be claimed Brand solicited or suggested the threat. On the contrary it appears Brand was only learning the object, seriousness, and extent of the angry threats that had already been made.

AFFIRMED.