# IN THE COURT OF APPEALS OF IOWA

No. 13-0101
Filed September 17, 2014

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**DAYTON JOE WALTER SABASTA,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Marshall County, James C. Ellefson, Judge.


　　　Appeal from convictions of second-degree kidnapping, extortion, and second-degree theft. **AFFIRMED.**


　　　Mark C. Smith, State Appellate Defender, and Theresa Wilson, Assistant Appellate Defender, for appellant.

　　　Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, Jennifer Miller, County Attorney, and James Scheetz, Assistant County Attorney, for appellee.


　　　Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

Dayton Sabasta appeals his convictions for kidnapping in the second degree, extortion, and theft in the second degree, the latter two enhanced as a habitual offender. Sabasta contends the district court (1) erred in denying his motion for judgment of acquittal because the convictions are not supported by substantial evidence and (2) abused its discretion in denying his motion for new trial because the convictions are against the weight of the evidence. Sabasta also challenges the jury instructions. He contends his trial attorney rendered constitutionally deficient performance by failing to object to the kidnapping instruction, and he contends the court abused its discretion in refusing to add specific intent language to the extortion jury instruction.

I.

One night in August 2012 in Sioux City, Lana Vandenbrink went out with her friends Kent and Heather. Sabasta, a friend of Heather's, joined the group. The group later returned to Vandenbrink's residence, where Sabasta and others stayed the night. Although it was her residence, Vandenbrink left at some point during the night and stayed with a friend because her residence was crowded. She returned the next morning.

When Sabasta awoke at Vandenbrink's residence the next morning, he discovered he was missing approximately $3000. "Furious, yelling, screaming," Sabasta threatened Vandenbrink and her daughter and demanded the return of his money. Vandenbrink and her daughter were scared and intimidated by Sabasta.

On the night of this same day, Sabasta's money had not yet been returned. Sabasta told Vandenbrink he needed collateral until he could get his money back. Sabasta, Vandenbrink, and two of Sabasta's friends, Shaun and Katie, loaded all of Vandenbrink's belongings into two vehicles. Vandenbrink testified Sabasta "ordered" her to load her belongings into the vehicles. Shaun and Katie left in one vehicle, and Sabasta took Vandenbrink in the other. Vandenbrink testified Sabasta told her she "had no choice" but to go. Vandenbrink did not run away or try and get help because Sabasta had a temper. Also, by this point, Sabasta had taken Vandenbrink's cell phone. Sabasta told Vandenbrink they were going to Des Moines, and they left. Vandenbrink fell asleep during the drive. When she woke up, they had arrived at Sabasta's residence.

Once at the house, Sabasta largely confined Vandenbrink to the den. For example, the morning after the group arrived at Sabasta's house, Vandenbrink asked to go outside and Sabasta told her no. Sabasta told his friend Katie to watch Vandenbrink because Vandenbrink should not be left alone. When Vandenbrink tried to leave the den area or inquire about what was happening, Sabasta yelled at her to return to the room and threatened he would tape her up with duct tape. On multiple occasions when Vandenbrink asked for her cell phone to be returned, Sabasta told her no. On one occasion, Sabasta allowed Vandenbrink to go outside for ten minutes while being supervised by Shaun. Sabasta hollered out the window to Shaun, "Don't let her get away."

Sabasta's purpose in holding Vandenbrink against her will was to use her as collateral until he got back the money he believed was stolen from him.

Sabasta directed Vandenbrink to text her friend Kent to send money. She did. Using Sabasta's phone, she sent a text message to Kent, asking for $600 to be sent via Western Union. Kent sent the money, and Sabasta and Vandenbrink drove to pick it up. Later, Sabasta directed Vandenbrink to use her phone and ask Kent to wire more money. Kent sent another $750 via Western Union. The day after the $750 wire transfer, Sabasta told Vandenbrink she had paid him enough money and she could leave. He did not return her phone, her car, or her belongings. Vandenbrink used Shaun's phone to contact a hotel.

After Vandenbrink had been at the hotel for a period of time, Sabasta contacted Vandenbrink again and asked if Kent would loan him money. Vandenbrink testified this was an actual request, which was different from Sabasta's earlier demands for payment. Sabasta met with Vandenbrink, and he then drove Vandenbrink to an abandoned farmhouse in Marshall County. Once there, Vandenbrink was able to walk to a nearby house. The owner of that home called the authorities. Responding officers found Vandenbrink walking alongside a rural road and Sabasta in the upstairs closet of the abandoned house where he was arrested.

## II.

We first address Sabasta's challenges to his convictions based on the sufficiency and weight of the evidence.

## A.

"Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts

consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Id.* (citation omitted). "We will uphold a verdict if substantial record evidence supports it." *Id.* (alteration omitted). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *Id.*

There is sufficient evidence supporting Sabasta's conviction for kidnapping in the second degree. In this case, the jury was instructed the State was required to prove the following: (1) Sabasta confined Vandenbrink with the specific intent to hold her for ransom or to secretly confine her; (2) Sabasta knew he did not have Vandenbrink's consent; and (3) Vandenbrink was held for ransom. Sabasta moved Vandenbrink against her will from her home in Sioux City to his home in a different city. He confined her to the den of his house under the watch of himself and others and under the threat of being duct-taped. Sabasta further isolated and confined Vandenbrink by taking away her car, her car keys, and her cell phone. When Vandenbrink asked for these items, Sabasta refused, providing further evidence Vandenbrink was being held against her will. During the course of confinement, Sabasta learned Vandenbrink's daughter had filed a missing persons report. Sabasta made Vandenbrink call her daughter and tell her she was on vacation so the police would stop looking for Vandenbrink. Finally, Sabasta explicitly stated he was holding Vandenbrink as collateral for

receipt of funds, and he did not release her until he believed he had been paid enough.

There is further evidence in the record, including a few text messages from Vandenbrink in which she states she is being held against her will or held hostage, sufficient to support the jury's verdict, and we need not discuss it in any great detail. We do note several things. First, a jury could infer from Sabasta's threats of physical violence and threats to duct tape Vandenbrink that Vandenbrink's actions were not voluntary. *See State v. Moss*, No. 10-0079, 2010 WL 5050561, at *4 (Iowa Ct. App. Dec. 8, 2010) (holding victim did not voluntarily accompany kidnapper to bank to withdraw money when done under the threat of violence). Similarly, Sabasta's contention that Vandenbrink had ample opportunity to leave fails for the same reason. The jury could reasonably infer Vandenbrink was being held against her will where Sabasta had previously threatened her with harm. *See id.*

> With respect to extortion, the court instructed the jury as follows:
>
> On or about August 9, 2012, to August 15, 2012, Mr. Sabasta threatened to inflict physical injury on Lana Vandenbrink. Mr. Sabasta intended to communicate the threat to Lana Vandenbrink. The threat was made for the purpose of obtaining something of value for Mr. Sabasta.

"Threats of physical harm need not be directly expressed, but may be contained in 'veiled statements' nonetheless implying injury to the recipient when viewed in all the surrounding circumstances." *State v. McGinnis*, 243 N.W.2d 583, 589 (Iowa 1976). "What is controlling is whether a recipient of the communication would interpret it as a threat of injury." *Id.*

We conclude there is sufficient evidence supporting Sabasta's extortion conviction. When Sabasta first discovered his money was missing, he screamed and yelled at Vandenbrink. He had her up against a wall and was "in her face." He raised his hand up as if to strike Vandenbrink or her daughter. Vandenbrink testified Sabasta threatened to beat her up "severely." After Sabasta removed Vandenbrink from her home and transported her to his, he threatened to duct tape Vandenbrink. All of this was done for the purpose of having Vandenbrink obtain money for Sabasta. She was his "collateral" for which he "hoped to obtain [something] of value for himself." *See State v. Crone*, 545 N.W.2d 267, 272 (Iowa 1996). When viewed in the light most favorable to the State, this conviction is supported by substantial evidence.

Finally, we conclude there was substantial evidence supporting the theft conviction. The court instructed the jury as follows:

> On or about August 9, 2012, to August 15, 2012, Mr. Sabasta took possession or control of currency. Mr. Sabasta did so with the intent to permanently deprive Lana Vandenbrink of the currency. The currency, at the time of the taking, was in the possession of Lana Vandenbrink.

Here, Sabasta directed Vandenbrink to text Kent and have money sent via Western Union. Sabasta drove Vandenbrink to the store to retrieve the money. Vandenbrink took possession of the money at the store, and then Sabasta took possession of the currency from Vandenbrink. Sabasta never told Vandenbrink it was a loan or that he would repay her—the jury could infer Sabasta had the intent to permanently deprive Vandenbrink of the currency. Vandenbrink testified the total amount taken exceeded $1000. The district court did not err in denying Sabasta's motion for judgment of acquittal as to these charges.

B.

Review of a district court's ruling on whether a verdict was contrary to the weight of the evidence is for an abuse of discretion. *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). Applying the "weight of the evidence standard," the district court weighs the evidence and considers credibility as it determines whether "a greater amount of credible evidence supports one side of an issue . . . than the other." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). Although the district court has wide discretion in deciding a motion for new trial, such discretion must be exercised "carefully and sparingly" to insure the court does not "lessen the role of the jury as the principal trier of the facts." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). The district court should grant a new trial only in the "exceptional case" where "a miscarriage of justice may have resulted." *Reeves*, 670 N.W.2d at 202. Our review is limited to the question of whether the district court abused its discretion in denying the motion and is not a decision on the merits of whether the verdict is against the weight of the evidence. *See id.* at 203. To establish an abuse of discretion, the defendant must show the district court "exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 202.

Sabasta raises all the same arguments in support of his "weight of the evidence" argument that he did in his argument regarding the "sufficiency of the evidence." The thrust of Sabasta's argument in both instances is Vandenbrink's testimony is not credible. Specifically, her trial testimony, on many occasions, was contrary to or inconsistent with her deposition testimony. In denying Sabasta's motion, the district court took these arguments into consideration.

While Vandenbrink's testimony was not perfect, it was corroborated by other witnesses, including Sabasta's friends Shaun and Katie. Further, Vandenbrink's testimony is corroborated by contemporaneous text messages she sent on those occasions where she was able to access a cell phone. For example, she texted she was "brought up here against my will i am not allowed to have my cell or my car keys." She also texted "they woke up gues im held hostage until either they fall asleep again or til 8 wen i can get money to get outa here."

Given the foregoing, we cannot say the district court abused its disretion in denying Sabasta's motion for new trial.

III.

We next address Sabasta's challenges to the jury instructions.

A.

Sabasta contends his attorney rendered constitutionally ineffective assistance by failing to object to the jury instructions for second and third-degree kidnapping. Ineffective-assistance-of-counsel claims typically are addressed in postconviction-relief proceedings where the record can be more fully developed. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). Nonetheless, a defendant may choose to raise such a claim on direct appeal. *See* Iowa Code § 814.7(2) (2011); *see State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). When such claims are presented on direct appeal, "the court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822." Iowa Code § 814.7. We conclude the record is adequate to address Sabasta's claims.

We review claims of ineffective assistance of counsel de novo. *See Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). To establish a claim for ineffective assistance of counsel, Sabasta must prove "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Straw*, 709 N.W.2d at 133. Failure to prove either element is fatal to the claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). To prove counsel failed to perform an essential duty, Sabasta must establish his counsel's representation dropped below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Regarding prejudice, the ultimate inquiry is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *Id.* at 687. This requires the defendant to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Sabasta first contends his counsel should have objected to the fourth element in the court's instruction on kidnapping in the second degree. The challenged instruction provided as follows:

Instruction No. 22

The State must prove all of the following elements of Kidnapping in the Second Degree:

1. On or about August 9, 2012, to August 15, 2012, Mr. Sabasta confined Lana Vandenbrink.

2. Mr. Sabasta did so with the specific intent to:

    a. hold Lana Vandenbrink for ransom, or

    b. secretly confine Lana Vandenbrink.

3. Mr. Sabasta knew he did not have the consent of Lana Vandenbrink to do so.

4. Lana Vandenbrink was held for ransom.

Sabasta contends his attorney was required to object to the instruction as a misstatement of the law because the law requires only the victim be held for the purpose of ransom and not that that the victim actually be held for ransom.

"[F]ailure to recognize an erroneous [jury] instruction and preserve error breaches an essential duty." *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006). Element four attempted to set forth the specific requirements of second-degree kidnapping found in section 710.3: "Kidnapping where the purpose is to hold the victim for ransom or where the kidnapper is armed with a dangerous weapon is kidnapping in the second degree." The statute does not require a victim actually be held for ransom, just that "the purpose [be] to hold the victim for ransom." Iowa Code § 710.3; *see State v. Hayes*, 532 N.W.2d 472, 475 (Iowa Ct. App. 1995) (concluding "only a showing of intent or purpose to hold a victim for ransom is required"). Under a very exacting reading of the challenged jury instruction, it is possible one could conclude it misstates the law set forth in section 710.3. Therefore, Sabasta argues his attorney had a duty to object to the instruction. Sabasta's argument has superficial appeal, but his claim ultimately fails, however, for three reasons.

First, the instruction given was a uniform jury instruction. *See* Iowa Crim. Jury Instruction 1000.2. "We are reluctant to disapprove [of] uniform jury instructions." *State v. Weaver*, 405 N.W.2d 852, 855 (Iowa 1987). Second, jury instructions are to be read as whole, not in isolation. *Anderson v. Webster City Cmty. Sch. Dist.*, 620 N.W.2d 263, 268 (Iowa 2000). When a single jury instruction is challenged, it will be judged in context with all the other instructions.

*State v. Stallings*, 541 N.W.2d 855, 857 (Iowa 1995). Here, jury instruction no. 25 addressed the ransom element of the challenged instruction:

> A person commits Kidnapping for Ransom when he holds someone for the purpose of obtaining money or other valuable things as the price of release. It makes no difference if the victim is actually released without payment.

Instruction no. 25 thus clarified what was required to be proven in instruction no. 22. When these instructions are read together, the jury was accurately instructed on the law. Finally, even if the challenged language in no. 22 is imprecise, the imprecision required the State to prove more than the law requires—that Sabasta actually ransomed the victim versus holding her for the purpose of ransom. If there is any prejudice resulting from element 4 of the challenged instruction, it is to the State and not Sabasta. *See State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) ("Error in giving or refusing to give a particular instruction warrants reversal unless the record shows the absence of prejudice. . . . [T]he test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice.")

Sabasta challenges instruction no. 22 in a second respect. Element 2 is a misstatement of law. The intent to secretly confine the victim in and of itself is not sufficient to support a conviction for second-degree kidnapping—it is simply one of five possible alternative modes of committing kidnapping. *See* Iowa Code § 710.1(1)-(5). "[T]he validity of a verdict based on facts legally supporting one theory for conviction of a defendant does not negate the possibility of a wrongful conviction of a defendant under a theory containing legal error." *State v. Martens*, 569 N.W.2d 482, 485 (Iowa 1997). With a general verdict of guilty, we

normally have no way of determining which theory the jury accepted. *See State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996). Sabasta argues because there was only a general verdict here, it is possible the jury could have convicted him of kidnapping in the second degree under the intent to secretly confine alternative. This argument is more compelling than Sabasta's first argument, but it ultimately fails.

Sabasta's claim is presented to us not as a direct attack against the claimed instructional error but instead as a claim for ineffective assistance of counsel. In this context, Sabasta must still establish he was prejudiced by trial counsel's failure to object to the improper jury instruction. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) ("If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently."). We definitively know in this case the jury did not rest its verdict on an improper basis because the court instructed the jury, in element 4 of instruction no. 22, that it had to find Sabasta actually held the victim for ransom to find him guilty of kidnapping in the second degree. The jury could not have returned a verdict of guilty without making such a finding under these instructions. Accordingly, Sabasta was not prejudiced by the erroneous instruction. *See Marin*, 788 N.W.2d at 838.

B.

Sabasta next contends the court erred in refusing to provide a specific intent instruction for extortion after his attorney requested it. A claim the court should have given a requested instruction is reviewed for an abuse of discretion. *State v. Lyman*, 776 N.W.2d 865, 876 (Iowa 2010). "An abuse of discretion

occurs 'when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012) (citation omitted).

Instruction 24 defined specific intent. The instructions for several other charged crimes included cross-references to instruction 24. Sabasta's attorney requested that Instruction 35 on extortion also reference specific intent. The district court did not include the cross reference to the specific intent instruction because the instruction included language regarding Sabasta's "purpose." Based on *State v. Coffin*, 504 N.W.2d 893, 895 (Iowa 1993), the district court determined intent and purpose were interchangeable. *See id.* ("Comparing element one of second-degree robbery with element three of extortion, we note that 'intent to commit' coincides with 'for the purpose of.' Both connote specific intent."). The instruction actually given was correct. *See State v. Bennett*, 503 N.W.2d 42, 46 (Iowa Ct. App. 1993). We find no abuse of discretion in refusing to link the extortion instruction to the specific-intent instruction.

## IV.

For the reasons set forth above, we conclude Sabasta's attorney was not ineffective in not challenging the second-degree kidnapping instruction, the court correctly instructed the jury on extortion, and the verdicts are supported by substantial evidence. We further conclude the district court did not abuse its discretion in denying Sabasta's motion for new trial. Accordingly, we affirm.

**AFFIRMED.**