Argued and submitted January 26, reversed and
remanded for trial May 18, 1981

## STATE OF OREGON,
*Appellant,*

*v.*

## JAMES STUART CLEMENTS,
*Respondent.*

## (No. DA 191522-8004, CA 18483)

628 P2d 433

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. On the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and John C. Bradley, Assistant Attorney General, Salem.

Steven Jacobsen, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

**ROBERTS, J.**

This is an appeal by the state from an order of the trial court dismissing the complaint which charged defendant with the theft of two food items, a package of meat and some clams,[1] from a Tradewell store. We reverse.

At time of trial defendant filed a motion to produce for inspection the meat which was alleged to have been stolen or, in the alternative, to dismiss the complaint.[2] Defendant's motion relied on ORS 135.805 - 135.873, the criminal discovery statute, and *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). The affidavit submitted in support of the motion states:

"On April 20, 1980, at approximately 2:35 p.m., I entered the Tradewell Store at 3955 S. E. Powell carrying a package of beef boneless chuck steak I had purchased at that store earlier the same day. After my initial purchase, I returned home, partially unwrapped the beef and after smelling the meat, determined it was spoiled.

"Thereupon, I returned to the Tradewell Store with the intention of returning the beef. Shortly after entering the store with the beef in my hand, I realized I had left my wallet in the car. I returned to the car, and upon reaching the car was approached by two security officers who took the beef from me; and the last I saw it, it was in the custody and control of the Tradewell security officers."

In the interim between the incident in the store and defendant's trial the meat, which had been retained by Tradewell, was, apparently inadvertently, destroyed. When the state was unable to produce the meat, the complaint was dismissed.

The state's position is that the dismissal should not have been ordered because: (1) the evidence would have been available had the defendant requested it earlier; (2) defendant failed to make a showing that the evidence was

---

[1] The state's brief indicates there was no evidence as to the identity of the second item, but the brief also points out that defense counsel stated it was clams.

[2] The state objects to the fact that the defendant's signature on the affidavit accompanying the motion was secured at the time the argument was being made (the defendant was sworn by the court for the purpose of signing the affidavit), and because the affidavit was neither offered or received into evidence. Because the state made no objection to this procedure before the trial court, we do not consider it. In any event, the affidavit is attached to and by reference incorporated in the motion.

favorable and material; (3) the loss of the evidence could not amount to a violation of defendant's constitutionally protected due process rights because the meat was at all times in the possession of Tradewell and, therefore, no state action was involved; and (4) the state should have been allowed to proceed on the charge of theft of the other food item regardless of the court's action regarding the meat.

Because defendant's motion to dismiss was based both on the criminal discovery statute and *Brady,* we think it important to discuss, and to distinguish in this case, the application of each, even though that issue is not dispositive of this case.

Pursuant to ORS 135.815

" * * * the district attorney *shall disclose* to the defendant the following material and information *within his possession or control:*

"(4) Any books, papers, documents, photographs or tangible objects:

"* * * * *

"Which were obtained from or belong to the defendant."

The state argues that defendant should have made a motion to produce earlier. The state's objection seems to be based in part upon its understanding that the defendant wanted the state to produce the meat so it could be tested for spoilage, and that the defendant presented no evidence that it could have been so tested. The state misses the point of defendant's argument. Defendant maintains that the evidence itself was exculpatory because of defendant's claim that he had purchased the meat earlier and that it was his property. This, he believed, would have been corroborated by the fact that the package had been unwrapped. The question is whether, under the facts of this case, defendant's motion was timely filed.[3] We conclude that the motion was timely as it related to discovery, but did not timely present a *Brady* issue.

---

[3] The motion was to produce and, in the alternative, to dismiss. At time of trial, defendant explained to the court that he was not sure he was going to file a motion until he learned the district attorney did not intend to introduce the meat in evidence.

The criminal discovery statutes, ORS 135.805 to 135.873, state in mandatory terms the duty of the prosecutor to disclose among other things, tangible objects taken from the defendant.[4] Disclosure by the prosecutor is intended to be automatic, and the statute "is designed to require discovery to proceed without the obtaining of routine court orders." Proposed Oregon Criminal Procedure Code 185, Commentary, § 321 (1972). Disclosure is to take place "as soon as practicable following * * * the filing of a complaint charging a misdemeanor * * *." ORS 135.845.

The statute does not, however, require that a defendant request discovery material at any particular time if the state does not comply with its discovery obligations. Here the defendant's use of the meat package required no examination prior to trial, and defendant merely expected the package to be available for use during trial. When he became aware that the state would not have the package available, defendant made the motion to produce.

■ If the state had a duty to disclose the evidence, it also had a duty to preserve that evidence so that it would be available for discovery purposes. The defendant requested the production of the item in time for trial, which is when he needed it. The motion to produce based on the discovery statute was timely.

■■ We conclude, however, that defendant's motion was not timely as to the *Brady* question raised. Under *Brady v. Maryland, supra,* the state has a duty to disclose material evidence favorable to the accused. The duty to disclose also operates as a duty to preserve exculpatory evidence. *United States v. Bryant,* 439 F2d 642 (DC Cir 1971); *People v. Hitch,* 12 Cal 3d 641, 117 Cal Rptr 9, 527 P2d 361 (1974); *see also State v. Michener,* 25 Or App 523, 550 P2d 449 (1976). Here, however, there is no indication that the state had any reason whatever to know that the condition of the package was material to the defendant's case until defendant's motion was filed. By that time the meat and its package had been lost or destroyed. Defendant, on the other hand, was aware of the exculpatory

---

[4] ORS 135.805(2) provides that "* * * 'disclose' means to afford the adverse party an opportunity to inspect or copy the material."

nature of the evidence from the time it was taken from him at the store.

■     The situation is distinguishable from that presented in *State v. Michener, supra,* in which we held the destruction of breathalyzer ampules before the defendant could have them independently tested was a *Brady* violation. The materiality of the test results in *Michener* was apparent, and the reliability of those results might be expected to be at issue. Here, however, it appears that the state had no reason to know that the condition of the meat package would be at issue or that defendant believed it to be exculpatory. We do not believe the state's duty to preserve evidence under *Brady* arises until the state knows, or has reason to know, that the evidence is, or is claimed to be, material and exculpatory. By the time the state was made aware of defendant's claims in this case the evidence had already been destroyed. Defendant may not now avail himself of the sanctions available under *Brady.*

    The state further argues that the meat in question here was never within its possession or control. The Proposed Oregon Criminal Procedure Code 186, Commentary, § 322 (1972) indicates that the Oregon standard for "control" is drawn from the American Bar Association Standards Relating to Discovery and Procedure Before Trial (Approved Draft 1970) § 2.1, which states:

"e. Possession or control

"Subsection (d) of the standard is intended to provide guidance as to whose possession or control over material and information is to be imputed to the prosecutor. It is intended to draw a realistic line which puts outside of that obligation *those persons or agencies* which may be identified as part of the government but who have no connection with the prosecution and, for practical purposes, may be regarded as third parties. Within the scope of the obligation will be those who would be known to the prosecutor because they are members of his staff or participated in the investigation or evaluation of the case or regularly report to his office or did so in the particular case." (Emphasis supplied.)

■     The ABA standard is aimed at providing a basis for identifying those persons or agencies *within* the government whose possession or control is to be imputed to the

prosecution. We believe that it may be reasonable in some situations also to impute to the prosecution possession or control of things actually in the possession or control of private security personnel, who function much like police officers and who may, in fact, make more arrests than many police officers. In this case, however, we know nothing about the Tradewell security personnel except that they stopped defendant and took the package of meat from him. On this record we cannot impute the possession and control of the Tradewell security personnel to the prosecution. There was, therefore, no violation of the discovery statutes because the meat package was never in the possession or control of the prosecutor.[5] The dismissal of the complaint was erroneous.

Reversed and remanded for trial.

---

[5] In *State v. Koennecke,* 22 Or App 89, 102, 537 P2d 1160 (1975), rev'd on other grounds, 274 Or 169, 545 P2d 127 (1976), we stated:

"We think Section 2.1(d) [of the American Bar Association Standards] not only is in keeping with the intent of the Oregon legislature in its adoption of ORS 135.805 - 135.873, but is a realistic formulation of a rule reasonably required to make effective the exercise of the due process rights assured under *Brady v. Maryland, supra;* * * *."

Therefore the determination that the prosecutor did not have possession or control of the meat package for discovery purposes, would also indicate that the state did not have possession or control for *Brady* purposes.