No. 83-313

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

　　　　Plaintiff and Respondent,

　-vs-

GARY L. PALMER,

　　　　Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　Sverdrup & Spencer, Libby, Montana

　　　For Respondent:

　　　　　Hon. Mike Greely, Attorney General, Helena, Montana
William L. Douglas, County Attorney, Libby, Montana

Submitted on Briefs: September 22, 1983

Decided: December 8, 1983

Filed: DEC 8 - 1983

*Ethel M. Harrison*

Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

Defendant Gary Palmer appeals from his conviction on charges of felony theft and felony criminal mischief following a jury trial in the District Court of the Nineteenth Judicial District, Lincoln County. For the reasons stated below, we affirm defendant's conviction.

On November 13, 1982, two employees of the St. Regis Paper Company observed Palmer and four companions, George Busse, William Glidden, Donald Souder and Bruce Bothum, cutting trees on land owned by St. Regis. The employees notified the county sheriff's office, which dispatched a deputy to the scene. En route, the deputy was joined by two law enforcement officers from the Kootenai National Forest. As the three men approached the scene of the tree cutting, one of the cutters, later identified as Glidden, ran behind some bushes. Glidden did not emerge from the bushes until the officer yelled for him to come out. Glidden explained that he had gone behind the bushes only to relieve himself, but the officer could find no traces of urination in the brush.

The officers and the deputy asked Glidden and the others for evidence of permission to be cutting trees on the section. They were referred to the defendant, Palmer, who produced a small slip of paper indicating that Palmer had authority to cut trees on section 36, a tract owned by the State of Montana. The slip was signed by Ralph James, who had a Christmas tree cutting permit from the State for section 36. However, one of the officers noted that the area the men were working was section 35, owned by St.

Regis, which lies adjacent to the state-owned section.

Palmer, his colleagues, and the officers left the scene and went to the sheriff's office to discuss the problem further. The next day, November 14, the sheriff's deputy and St. Regis employees returned to section 35 to conduct an investigation. One of the employees determined that the most recent cutting had been done on St. Regis land, and found no evidence of recent cutting on state-owned section 36. This conclusion was confirmed by a state forester observing the area a few days later. Palmer had insisted that he and his colleagues were cutting on section 36. Photographs taken at the scene revealed that the property lines were clearly demarcated by posted notices, although Palmer maintained that he had not seen these notices until the forest service officers and the deputy had discovered the cutting on November 13.

The investigation revealed that Palmer and the others had been cutting the trees near the ground, and "topping" the felled trees so that the tops could be used as Christmas trees. St. Regis employees and the sheriff's deputy were able to match the butts of the trees to stumps on section 35. The deputy retained some of the trees, butts and stumps as evidence. St. Regis retained the topped Christmas trees and other butts. The trees were later sold at wholesale for approximately $1,600. The employees also took estimates of damages to the land. The estimates included $200 to remove the stumps; $329 for replacement of plant seedlings, and $1,849 for loss of thirty year's tree growth.

Palmer and his four associates were charged with felony theft and felony criminal mischief for illegally

removing and damaging the trees. The four associates negotiated a plea bargain and plead guilty to misdemeanor theft. Palmer pled not guilty to all the charges against him. Although his colleagues testified on his behalf at trial, Palmer was convicted and sentenced to two years in the Montana State Prison.

Palmer appeals from his conviction, and raises three issues:

(1) Whether the District Court erred in failing to dismiss the charges against Palmer because of the State's alleged suppression or destruction of material and exculpatory evidence?

(2) Whether Palmer's conviction of both felony theft and felony criminal mischief violates multiple punishment statutes?

(3) Whether the District Court erred in allowing testimony of monetary values other than "current market value" to establish proof of felony criminal mischief?

ISSUE ONE:

Prior to trial, and immediately following presentation of the state's case-in-chief, Palmer's counsel moved for dismissal of the charges on the grounds that the state had suppressed or destroyed material, exculpatory evidence. Palmer maintained that, because the State had disposed of all but four or five of the trees cut by Palmer and his associates, he had no evidence which would tend to prove that they had been cutting trees on State-owned section 36. Suppression or destruction of material, exculpatory evidence by the State amounts to a violation of a defendant's due process rights and warrants dismissal of charges against

him.  See Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; State v. Craig (1976), 169 Mont. 150, 545 P.2d 649.

The District Court denied all motions by defense counsel to dismiss the charges.  We find no error in the court's actions.  When the deputy and the St. Regis employees returned to the scene of cutting, they investigated both sections in dispute.  They found no evidence of recent cutting on State-owned section 36, but did find such evidence on section 35, and gathered sufficient evidence relevant to that area.  Although an investigation of section 36 in February, 1983, revealed that trees had been felled on that section around November, 1982, the method of cutting was markedly different than that used by Palmer and his colleagues on section 35.  Furthermore, the trees in question were retained and later sold by St. Regis, and not the State, as Palmer has argued since trial.

Palmer's counsel filed a motion to produce all the trees cut on the areas in question nearly five months after the incident arose.  In State v. Clements (1981), 52 Or.App. 309, 628 P.2d 433, under facts very similar to those at bar in the immediate case, the Court of Appeals of Oregon held that a defendant could not avail himself of the protections afforded under Brady, supra, where a motion to disclose evidence was filed long after the evidence had been destroyed and where the state had no reason to know of defendant's claims prior to the filing of the motion. Clements involved the destruction of meat allegedly stolen from a grocery store.  Although the defendant in that case was aware of a possible exculpatory value in the meat, i.e.,

that he allegedly had not stolen it, but was returning it to the store because it was supposedly tainted, the state had no reason to know that the condition of the meat was material to defendant's case until the motion was filed. 52 Or.App. 309, 628 P.2d at 435-36.

In the instant case, the defendant could have moved very early in the proceedings to preserve any evidence having some, if any, connection to section 36. However, the initial investigation of the two sections gave neither the State nor St. Regis any indication that the trees seized were connected to section 36, or that any materials gathered from section 36 would be critical to establishing Palmer's innocence. Indeed, we find no indication in the record that there was any exculpatory evidence available to Palmer. Moreover, the allegedly exculpatory evidence was never in the possession of the State. The record is clear that St.Regis was in effective control of the remaining trees, stumps and butts found on section 35. Under these circumstances, the State did not have possession or control of these items for Brady purposes. Clements, supra, 52 Or.App. 309, 628 P.2d at 436 n. 5.

ISSUE TWO:

Palmer further alleges that his conviction for both felony theft and felony criminal mischief violates the provisions of the multiple punishment statute, Section 46-11-502, MCA, and this Court's construction of that statute.

Section 46-11-502 provides that:

> "When the same transaction may establish the commission of more than one offense, a person charged with such conduct may be prosecuted for each such offense. He may

not, however, be convicted of more than one offense if:

    (1) one offense is included in the other;

    (2) one offense consists only of a conspiracy or other form of preparation to commit the other;

    (3) inconsistent findings of fact are required to establish the commission of the offenses;

    (4) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

    (5) the offense is defined to prohibit a continuing course of conduct and the defendant's course of conduct was interrupted, unless the law provides that the specific periods of such conduct constitute separate offenses."

In a recent decision, State v. Wells (Mont. 1983), 658 P.2d 381, 40 St.Rep. 127, we had this to say about multiple punishments:

"The double jeopardy prohibition contained in the Fifth Amendment to the United States Constitution has been applied to state proceedings since 1969. Benton v. Maryland (1969), 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 717. This prohibition protects a defendant from both multiple prosecutions for offenses arising out of the same transaction and from multiple punishments imposed at a single prosecution for the same offense. See North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656,664-665. Where, as here, defendant was tried at a single prosecution for all of the statutory crimes in question, the issue is one of multiple punishments. State v. Close (1981), ____ Mont. ____, 623 P.2d 940, 949, 38 St.Rep. 177, 188.

"The analysis that this Court has consistently applied in determining whether one offense is included within another offense is the test set forth in Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309. In Blockburger, the Court ruled:

'The applicable rule is that where the same act or transaction constitutes a

-7-

violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

"The Blockburger test is codified in section 46-11-502, MCA.

"This Court has adopted the approach whereby the analysis is applied to the statutes in question rather than to the facts of the individual case. State v. Ritchson (1981), ____ Mont. ____, 630 P.2d 234, 237, 38 St.Rep. 1015, 1018. In determining whether multiple punishments should be allowed for offenses arising out of the same transaction, the dispositive question then becomes whether the legislature intended to provide for multiple punishments. State v. Close (1981), supra, 623 P.2d at 949, 38 St.Rep. at 188. 'Blockburger's analysis must stand or fall on the working of the statutes alone, not on the indictment.' Close, 623 P.2d at 950, 38 St.Rep. at 189. See also, State v. Buckman (1981), ____ Mont. ____, 630 P.2d 743, 745, 38 St.Rep. 1007, 1009; State v. Coleman (1979), ____ Mont. ____, 605 P.2d 1000, 1008-1009, 36 St.Rep. 1134, 1138-1140A; State v. Perry (1979), 180 Mont. 364, 368, 590 P.2d 1129, 1131; State v. Davis & Close (1978), 176 Mont. 196, 199, 577 P.2d 375, 377; State v. Radi, supra, 176 Mont. at 462, 578 P.2d at 1176."

658 P.2d 388-89, 40 St.Rep. at 134-35.

Adhering to these standards, we find no error in convicting Palmer on both felony theft and felony criminal mischief. Theft in the context of this case consists of purposely or knowingly taking the property of another with the purpose to deprive. Section 45-6-301(1)(a), MCA. Criminal mischief in the context of this case consists of purposely or knowingly damaging or destroying the property of another without his consent. Section 45-6-101(1)(a), MCA. Clearly, the two statutes are similar only in the requirements concerning mental state, and proof of a

requisite mental state is a feature of any criminal statute. Palmer, however, insists that the act of "taking" or "depriving" involved in theft is synonomous with the act of "destroying" or "damaging" involved in criminal mischief.

Common sense dictates that the offenses of theft and criminal mischief are neither coextensive nor wholly includible within each other. There are many situations where the acts of a wrongdoer involve both theft and criminal mischief, and the instant case is but one example. Palmer deprived St. Regis of its property, by taking portions of trees to use or sell as Christmas trees. Palmer damaged St. Regis property, as there was evidence of diminished value to the land because of the destruction. The conviction on charges of theft and criminal mischief was legally permissible.

ISSUE THREE:

Palmer contends that the evidence of value used to charge and convict him of felony criminal mischief was inadmissible. In the absence of any acceptable values, Palmer maintains that his conviction on that charge cannot stand.

The gist of Palmer's defense is that proof of "value," for the purpose of establishing commission of a felony, is controlled by Section 45-2-101(69)(a), MCA, which states that value "means the market value at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of the replacement of the property within a reasonable time after the crime." The evidence of "value" produced at trial to establish the act of felony criminal mischief consisted of costs of stump removal, replanting,

and lost future tree growth. While the costs associated with these items are not within the scope of "value" as defined in Section 45-2-101(69)(a), we find that they are still admissible to establish proof of felony criminal mischief.

Most criminal statutes, including theft, draw the line between a felony and a misdemeanor based upon the "value" of the property involved. It is to these statutes that the definition contained in Section 45-2-101(69)(a) applies. The distinction between felony and misdemeanor criminal mischief, however, is not measured by the "value" of property damaged or destroyed. On the contrary, the difference is controlled by the amount of "pecuniary loss" to the owner of the property. See Section 45-6-101(3). The term "value," as defined by Section 45-2-101(69)(a), does not appear in the criminal mischief statute. Palmer points to certain Compiler's Comments to the statute which use the word "value" in the context of criminal mischief, but these comments, apparantly drafted by the Montana Criminal Law Information and Research Center at the University of Montana Law School, are not part of the statute and thus do not have the force of law. Moreover, they are clearly misleading with respect to classifying categories of criminal mischief.

Section 45-1-102(2) requires provisions of the criminal code "to be construed according to the fair import of their terms with a view to effect [the object of the code] . . . and to promote justice." Simply defined, "pecuniary loss" means "[a] loss of money, or something by which money or something of money value may be acquired." Black's Law Dictionary 1018 (5th ed. 1979). Evidence of

damages from loss of future tree growth, as well as the out-of-pocket expense of removing stumps and replanting, is includible within the concept of pecuniary loss. Obviously, the statute was carefully drafted to avoid reference to "value," because property damaged or destroyed by criminal mischief may not, in some instances, have a market value or replacement cost. The trial court properly allowed the State's evidence to show the monetary losses arising from defendant's damage to St. Regis property. This evidence clearly established more than $150 of pecuniary loss---enough to charge and convict Palmer of felony criminal mischief. Even if we accept as true one of Palmer's subarguments, i.e., that there was insufficient evidence to establish any attempt by St. Regis to remove stumps and reseed the harvested portions of section 35, the evidence of money damages from lost future tree growth clearly exceeds the $150 minimum necessary to impose a felony conviction.

Accordingly, the conviction of the defendant Palmer is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

-11-

_John Conway Harrison_

_John C. Sheehy_
Justices

-12-