STATE of Iowa, Plaintiff-Appellee,

v.

Jon Michael MANICCIA,
Defendant-Appellant.

No. 68607.

Court of Appeals of Iowa.

June 26, 1984.

Raymond E. Rogers, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Mary Jane Blink, Asst. Atty. Gen., for plaintiff-appellee.

Heard by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

Defendant Maniccia appeals from his conviction for delivery of a controlled substance (cocaine) in violation of Iowa Code section 204.401(1)(a)(1981). He asserts on appeal: (1) that he was denied due process by the State's intentional destruction of evidence; (2) that the trial court erred in admitting certain testimony over hearsay and constitutional objection; (3) that testimony of a police officer concerning statements made by a voice he could not identify was improperly admitted; and (4) that he should have been permitted to introduce a diagram of his house into evidence in surrebuttal.

Defendant was charged by information with delivery of cocaine in violation of Iowa Code section 204.401(1)(a)(1981) and convicted following a jury trial where conflicting evidence was presented concerning a drug transaction.

A police officer testified that he and an informant went to the defendant's house to purchase cocaine and that he waited while the defendant and the informant went into the kitchen. The informant returned and told him that the defendant was going to the basement to get the cocaine and that they should go there shortly. Maniccia then went down the basement stairs. The officer and the informant subsequently went to the basement, picked up some cocaine, and returned upstairs, at which time the officer gave Maniccia $475.

Maniccia offered a somewhat different version of events, testifying that the informant had previously stored the cocaine in the basement and that in the kitchen he had explained that he wanted to repay a loan by having defendant sell the cocaine to the officer. Maniccia testified that he refused to participate in the transaction and did not go to the basement, that the infor-

mant went to the basement alone, and that he was later given money by the informant, not the officer. Maniccia's version of events was corroborated by a witness who testified that he was present in the kitchen, and by another witness who testified that he was present in the basement and that it was the informant and not the defendant who had been there.

The informant had been wired with a microphone and his conversations were monitored from two locations and tape recorded at the more distant of the two. One of the officers who made the tape testified that they erased it when, upon replay, it contained mostly static with only a few intelligible words. Judge Carstensen overruled a pretrial motion to dismiss based on the destruction of the tape, production of which had been sought in a pretrial motion. Judge Briles refused defendant's request for an instruction permitting the jury to draw an inference adverse to the state from the destruction of the tape.

A police officer at the monitoring location where no tape was made was able to hear the informant's conversations but could identify only the voices of the informant and the officer in the house. Over hearsay and constitutional objection he was permitted to testify that an unidentified voice made the following statement: "You get the money from him and take him to the basement," and "You can cut it with no problem." The officer inside the house testified, inter alia, that Maniccia told him that a person could "add to" the cocaine.

Defendant also objected on hearsay and constitutional grounds to testimony by the officer in the house concerning what the informant had told him about the conversation with defendant in the kitchen, including inculpatory statements allegedly made by defendant. The trial court overruled the objection but later instructed the jury that the evidence was only to be considered for the purpose of explaining the officer's subsequent action.

During the State's case in chief, the defense, on cross-examination of the officer who had been in the house, had him draw a diagram of where he had been when he observed defendant start down the basement stairs. Maniccia denied having gone to the basement and introduced other evidence, including photographs and two diagrams, tending to show that the officer could not have observed defendant start down the stairs from the position where he claimed to have been. On rebuttal the State called the officer and two other officers who had subsequently been in the house to contradict the defendant's evidence. The State was permitted, over objection, to introduce into evidence another diagram of the house, but in surrebuttal the court sustained the State's objection to admission of a drawn-to-scale diagram of the house.

## I.

We first address Maniccia's argument that he was denied due process by the State's "intentional destruction" of the tape recording of the alleged cocaine transaction. It is Maniccia's position that the district court erred in failing to impose a sanction for the State's destruction of such evidence. Maniccia's motion to dismiss, based upon the destruction of evidence, was denied. Maniccia's requested jury instruction, which would have permitted a favorable inference for defendant from the destruction of evidence, was likewise denied.

Because the defendant is asserting a violation of basic constitutional safeguards, our scope of review is *de novo* and we will make an independent evaluation of the totality of the circumstances. *State v. Davis*, 304 N.W.2d 432, 435 (Iowa 1981).

Where a criminal defendant claims a due process violation premised upon an allegation of the State's suppression of evidence, our analysis begins with the three-part test set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See State v. Brown*, 337 N.W.2d 507, 509 (Iowa 1983). The *Brady* test requires: (1) a proper defense request for the evidence; (2) a showing

that the evidence would be favorable to the defendant; and (3) a showing that the evidence was material. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1193–97, 10 L.Ed.2d at 218. Under the *Brady* test, good or bad faith on the part of the state is irrelevant. *Id. State v. Brown,* 337 N.W.2d at 509.

■ In this case, Maniccia's specific request for "any and all voice recordings of the transaction" clearly satisfies the first prong of the *Brady* test. Where, as here, the suppressed evidence has been destroyed, the application of the second prong, favorableness to the defendant, and the third prong, materiality, becomes troublesome. In *State v. Brown,* 337 N.W.2d at 510, the court held that it would be unfair to require the defense to show favorableness when it is impossible to determine the nature of the evidence, and noted that a contrary holding could encourage "loss" of evidence to avoid a damaging disclosure. In response to that problem, the court in *Brown* adopted the rule in *United States v. Bryant,* 439 F.2d 642, 648 (D.C.Cir.1971), which it characterized as a "blend of 'favorability' and 'materiality.'" *Brown,* 337 N.W.2d at 510. The *Brown* court stated the rule as follows: "Where evidence is material and there is the "unavoidable possibility that the [evidence] might have been significantly favorable to the accused" denial of access to the evidence is a denial of due process. *Bryant,* 439 F.2d at 648." *Id.* at 511. Evidence is material if it is offered to prove a propositon which is a matter in issue or is probative of the matter in issue. *Id.* The tape recording of the conversation which occurred during the alleged cocaine transaction is clearly material, because the central issue at trial was Maniccia's involvement in the transaction as evidenced by what was said in Maniccia's residence on that day. Both the State and the defense offered testimony regarding the conversations that took place, and much of the State's testimony was controverted by defense witnesses. We find that the *Bryant* test was met in this case because the evidence which was destroyed is material, and there is the "unavoidable *possibility*" that the evidence

might have been significantly favorable to Maniccia. [emphasis added]. The State's denial of access to the evidence is therefore a violation of due process. We need not examine the State's motives in destroying the tape recording, because good or bad faith on the part of the State is irrelevant in establishing a due process violation resulting from the state's suppression of evidence. *See Brown,* 337 N.W.2d at 509.

■ The defendant argues that the trial court erred in overruling his motion to dismiss based upon the destruction of evidence, and in refusing to submit his requested jury instruction. Maniccia also urges, in the alternative, that on remand this court should order the suppression of the testimony of the D.C.I. agent and the undercover police officer regarding the conversations which were tape recorded.

In this case, we find that dismissal of the criminal prosecution is not an appropriate remedy. *See State v. Langlet,* 283 N.W.2d 330, 333 (Iowa 1979). Similarly, suppression of the testimony of witnesses to the transaction is not an appropriate remedy for the destruction of the tape.

The requested jury instruction was;

If you find from the evidence that there existed a tape recording of material statements made or words spoken at or about the scene of the alleged transaction existed [sic] and that the state intentionally destroyed the tape recording, you may, but are not required to, infer that the information contained on the tape recording would be, if available, adverse to the state and favorable to the defendant.

We believe that in this case, where a due process violation occurred due to the state's destruction of evidence, the appropriate remedy is a jury instruction permitting a favorable inference for the defendant from the destruction of the evidence. *See id.* The trial court, on remand, is therefore directed to so instruct the jury.

## II.

Maniccia next argues that the trial court erred in admitting the testimony of officer

McPherren over hearsay and constitutional objections. The State contends the statements at issue were nonhearsay because they were introduced to explain subsequent conduct. The state argues, in the alternative, that even assuming the statements were hearsay, they were nonetheless admissible as part of the facts and circumstances surrounding the crime.

Prior to trial, the defendant filed a motion in limine to prevent officer McPherren from testifying with respect to any statements made by the informant, Steve Norman, to the defendant at the scene, while not in the presence of McPherren and anything said to the informant by the defendant at the scene while not in the presence of McPherren. The trial court denied the motion, ruling that McPherren could testify to anything that Steve Norman told him the defendant had said at the scene.

Over the defendant's renewed objections at trial, the court allowed McPherren to testify as follows:

> THE WITNESS: We set [sic] down at the dining room table waiting for Mr. Maniccia, and the informant advised me that he had a conversation with Mr. Maniccia in the kitchen and Mr. Maniccia told him that he wanted the informant to handle the money and the dope, that he didn't want to deal with me. He didn't want to hand anything to me, even though he knew I was buying it.

> \* \* \* \* \* \*

> THE WITNESS: The informant advised me that Mr. Maniccia was going to go down the basement, get the dope, and in a little bit, I would go down, get the dope, and then I was to give the informant the money, and the informant would give Mr. Maniccia the money.

> \* \* \* \* \* \*

> Q. What did [the informant] say?
> A. First of all, he said Maniccia was mad at him for bringing someone in the house that he didn't know.

The trial court subsequently submitted the following jury instruction:

> Testimony has been admitted into this record from the witness McPherren concerning statements allegedly made to him by Steve Norman about statements allegedly made by the defendant to Mr. Norman which were not heard by the witness McPherren. All such statements of Mr. Norman have been admitted solely for the purpose of explaining the actions of the witness McPherren and not to establish the truth or falsity of the alleged conversation of the defendant with Mr. Norman.

The defendant raised the same issue in his post-trial motion, and the trial court again overruled the motion.

■ Hearsay is a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *State v. Galvan*, 297 N.W.2d 344, 346 (Iowa 1980). If the statements at issue here were offered by the state to prove the truth of the matter asserted, they are hearsay evidence. We look to a statement's purpose in deciding whether it is hearsay. *State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979). This court's review is limited to abuses of discretion, and a ruling by the trial court will be upheld as long as there is one hearsay theory of admission applicable under the circumstances. *State v. Baker*, 293 N.W.2d 568, 574 (Iowa 1982).

■ The State argues that the statements at issue are not hearsay because they were admitted solely for the purpose of explaining the subsequent actions of officer McPherren and not to establish the truth or falsity of the alleged conversation between the defendant and the informant. *See State v. Coburn*, 315 N.W.2d 742, 746 (Iowa 1982) (out-of-court statement, otherwise hearsay, admitted not to show truth of what was said but to explain responsive conduct, not regarded as hearsay).

In the first instance, McPherren testified that the informant advised him that Maniccia wanted the informant to handle the money and the dope, and that Maniccia didn't want to deal with McPherren. The

court in *Coburn* found that the "[d]efendant's verbal and physical responses during the ... interview lose much of their impact without showing the context in which they took place." *Id.* at 746–47. Similarly, the court in *State v. Hilleshiem*, 305 N.W.2d 710, 712–13 (Iowa 1981), found that the defendant's admission "could not fully be understood out of context" and that the otherwise inadmissible testimony could be admitted "in order to show the context in which admissible statements by another party were made." The state argues that in this case the statement explains why McPherren followed the informant into the basement and why McPherren picked up the cocaine without waiting for the defendant to give it to him. In the second instance, the informant told McPherren that the defendant told him that he was going down to the basement "to get the dope," that McPherren was to give the informant the money, and that the informant would then give the money to Maniccia. The State argues that this statement, like the first, explains officer McPherren's subsequent conduct. We note the record reflects that McPherren actually gave the money directly to Maniccia rather than going through the informant. The final statement by the informant was that "Maniccia was mad at him for bringing someone in the house that he didn't know." The State argues that this statement is admissible to explain that officer McPherren had reason to believe that Maniccia was suspicious of him and that McPherren therefore responded by taking special care to make sure no one was "lurking in the basement" before he picked up the cocaine off the scales.

After a careful reading of the transcript in this case, we find that the statements at issue were *not* necessary to explain officer McPherren's subsequent conduct. His conduct as an undercover police officer in this transaction could easily be explained without resorting to the use of the statements admitted here. Despite the limiting instruction given, we find that the out-of-court statements were offered to prove the defendant's involvement, through the informant, in this alleged cocaine transaction.

Because the out-of-court statements were offered to prove the truth of the matter asserted, they constitute inadmissible hearsay evidence. The trial court's failure to exclude this testimony over proper defense objections amounted to an abuse of discretion.

### III.

Maniccia next argues that the trial court abused its discretion in overruling defense objections to a D.C.I. agent's testimony concerning incriminating statements made by an unidentified voice heard while monitoring the transaction.

Defense counsel filed a pretrial motion to bar the testimony of the D.C.I. agent, Roger Timco, regarding voices he heard over the radio receiver on hearsay and constitutional grounds. The state resisted, alleging that because officer McPherren would identify the defendant as the individual who spoke the words heard by Timco, a proper foundation existed for Timco's testimony and thus the statements would be admissible as party admission. At trial, the court overruled all defense objections to such testimony and agent Timco testified as follows:

BY MR. AMENT:

"Q. When we left off and the jury exited, I believe you had stated that you had heard a female voice or a voice you believed to be a female voice? A. I did.

Q. What was the next noises [sic] you heard? A. Conversation by an unidentified male.

Q. Okay. Did you hear specific words that the unidentified voice said? A. I did.

Q. What were those words? A. "What do you want?"

Q. Was there a response made to that? A. There was.

Q. Who made that? A. The informant.

Q. What did he say? A. "A quarter, I guess."

Q. What was the next sounds you heard? A. There was hushed conversation or whispering.

Q. Okay. And after that, what did you hear? A. Then I heard further conversation that I was able to decipher.

Q. Who was stating that? A. The unidentified male.

Q. What did the unidentified male voice say? A. "You get the money from him, and take him to the basement."

Q. What's the next noises you heard?

\* \* \* \* \* \*

A. It sounded like either several people running in place or someone descending or ascending a stairwell.

Q. What was the next thing that you heard? A. I heard more stair-like sounds, or marching of some sort.

Q. And then? A. Then I heard some further conversation.

Q. Was that identifiable? A. It was the unidentified male.

Q. What was the unidentified male saying? A. "You can cut it with no problem."

Q. What were the next sounds that you heard? A. I heard good-bys, just in general, no specific quotes.

Q. How long was it from this time until you again saw the informant and Officer McPherren? A. From the good-bys, it would have been about a minute or two.

Q. Who was stating that? A. The unidentified male.

Q. What did the unidentified male voice say? A. You get the money from him, and take him to the basement."

■ The Iowa Supreme Court has adopted the definition of hearsay in Rule 801, Federal Rules of Evidence, and has also followed Rule 801 insofar as it excludes admissions from the definition of hearsay. *State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976). *See* Rule 801(d)(2), Iowa Rules of Evidence. The statements at issue are therefore not barred by the hearsay rule. Rather, the problem presented by these statements is one of authentication. *See State v. McGinnis*, 243 N.W.2d 583, 588 (Iowa 1976). The fact that Timco could not identify the speaker should not

preclude the jury from considering the statements as a matter of law where there is corroboration as to the speaker's identity. *See id.* Furthermore, evidence of the speaker's identity may be circumstantial. *Id.*

In this case there was circumstantial evidence of the speaker's identity. Officer McPherren, who was in the defendant's home when the statements were made, testified as to the persons present and their activities. While McPherren did not hear the statements testified to by agent Timco, his testimony regarding the persons present, as well as the defendant's actions during the transaction, does circumstantially corroborate Timco's testimony. We find no abuse of discretion on the part of the trial court in overruling the defendant's objections to Timco's testimony regarding defendant's admissions.

### IV.

■ Maniccia finally argues that the trial court abused its discretion in not permitting the defendant to introduce a "to-scale diagram" of the defendant's house in surrebuttal. We note that the trial court is vested with broad discretion concerning the admission of rebuttal evidence, and its ruling will be disturbed only upon a clear abuse of discretion. *State v. Bakker*, 262 N.W.2d 538, 543 (Iowa 1978).

At issue in this case is whether McPherren, from his position in the dining room, could have seen the defendant walk down the basement stairs. On cross-examination, McPherren drew a diagram of the house and indicated where he was standing when he saw the defendant go down the basement stairs. This diagram was received in evidence. The defendant testified that he did *not* go down the basement stairs, and that McPherren, from his vantage point, could not have seen anyone walk to the entrance of the basement. The defendant then introduced two diagrams of his house, as well as photographs of his house.

On rebuttal the State recalled McPherren, who testified that the defendant's diagram incorrectly showed the location of the

doorway between the kitchen and the dining room. Officers Bentley and Nesbitt also testified that the defendant's diagram was inaccurate. Over defense objection, the trial court received the State's diagram of the defendant's house in evidence on rebuttal. At the close of the State's rebuttal, the State moved in limine to preclude the defendant from putting on any additional testimony or introducing any further diagrams of the floor-plan of his house "on the grounds that all this was covered by several of their witnesses in the defendant's case-in-chief." When the defense, through their surrebuttal witness, sought to introduce a scale drawing of the premises, the State objected because such evidence was cumulative. The trial court sustained the objection. The witness then attempted to testify regarding the state's diagram of the premises as follows:

Q. With regard to that doorway and the north bedroom wall, is the north bedroom wall too far south or too far north? A. Say that again.

Q. This bedroom wall on this diagram, is that shown to be too far north or too far south? A. Too far south.

Q. Now, you have viewed the entryway— A. Yes.

Q. And as you—

THE COURT: Would counsel approach the bench?

(At which time, a short discussion was had out of the hearing of the reporter.)

BY MR. WOODIN:

Q. If a person was standing in the dining room area, would he be able to see a person go down the back stairs?

MR. AMENT: Objection, same reasons.

THE COURT: I'm going to sustain that.

MR. WOODIN:

Q. In order to determine where a person was going to go after they left the kitchen door, can you show the jury, on Exhibit F, where they would have to be standing?

MR. AMENT: Objection, same reasons; that's already been testified to in the case in chief.

THE COURT: Sustained.

The defendant then attempted to testify regarding the State's diagram of his residence as follows:

Q. Now, on Exhibit F, there are no showings of any appliances or cupboards, is that correct? A. Correct.

Q. Were there appliances or cupboards in the house on that day? A. Yes, there was.

Q. Can you show us where they were?

MR. AMENT: I would object to this as adding to the defendant's case in chief and not rebuttal. There was no mention of any appliances or cupboards in the State's rebuttal.

THE COURT: The purpose of rebuttal is simply to meet something new that was put in. You didn't put it in originally, and I'm not going to permit it now. The objection is sustained.

\*   \*   \*   \*   \*   \*

Q. Okay. On this diagram, Exhibit F, why is that line on that bedroom that far south?

MR. AMENT: Objection, Your Honor, the location of walls and doorways has already be testified to in the defendant's case in chief; this is merely additional testimony to the case in chief and not rebuttal.

THE COURT: I'm going to sustain the objection.

Because of our disposition of this case on the destruction of evidence issue, we need not decide whether the trial court abused its discretion in not permitting the defendant to introduce the diagram in surrebuttal. We trust that, on retrial, the defendant will present any evidence on the issue of officer McPherren's vantage point in relation to the basement stairway during his case-in-chief.

**REVERSED AND REMANDED WITH DIRECTIONS.**