**Carl Leroy HEMPHILL, Appellant,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION,**
**Appellee.**

No. 85–522.

Supreme Court of Iowa.

Jan. 15, 1986.

Rehearing Denied Feb. 27, 1986.

Jon M. Kinnamon, of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., and Robin G. Formaker, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

---

LARSON, Justice.

This petitioner has appealed the district court's order affirming revocation of his driver's license under Iowa Code section 321B.13 for his refusal to submit to body specimen tests. He raises two issues: (1) whether the written request for body specimens was invalid; and (2) whether the officers' destruction of a video tape taken at the time of his arrest entitled him to an inference that, if it were available, it would have been favorable to his case. The district court rejected these arguments, and, on appeal, we affirm.

I. *The Execution of the Implied Consent Forms.*

Hemphill complains that the request for body specimens which followed his arrest for driving while intoxicated were improperly executed because an affidavit on the request form was not signed or notarized. He points to wording on the request form itself which included the affidavit form and this statement:

IMPORTANT: This affidavit must be attested to by a court notary, or other person authorized under Section 80.9, Section 321.2 or Section 78.1 of the Iowa Code....

The issue is whether failure to complete the affidavit and notary form vitiates the implied consent procedure.

Iowa Code section 321B.4(1983) provided: Any person who operates a motor vehicle in this state upon a public highway under circumstances which give reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, saliva, or urine, and to a chemical test or tests of the specimens for the purpose of determining the alcoholic content of the blood, subject to this section. *The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer* having reasonable grounds to believe the

person to have been operating a motor vehicle in violation of section 321.281....
(Emphasis added.)

It is apparent from a reading of this section that, while it requires a written request, it does not require an affidavit or notarization. Nor does any other section of chapter 321B make such requirements for the request forms.

The wording of section 321B.4, insofar as any requirement for notarization is concerned, must be contrasted with the wording of section 321B.13 (1983) which provided for revocation of the operator's license upon the officer's "sworn report" concerning the driver's refusal of the test. That section provided:

If a person refuses to submit to the chemical testing, a test shall not be given, but the department, upon the receipt of a *sworn report* of the peace officer that the officer had reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, that specified conditions existed for chemical testing pursuant to section 321B.4, and that the person had refused to submit to the chemical testing, shall revoke the person's license or permit to drive....

(Emphasis added.) The "sworn report" required by this section in order to revoke a license was, in Hemphill's case, furnished by the peace officers. Contrary to Hemphill's argument, however, a similar affidavit and notarization form was not required on the request for body specimens under section 321B.4, even though provisions for them were included on the request form itself.

II. *Destruction of the Video Tape.*

Hemphill next contends that the district court erred in refusing to rule that the destruction of a video tape taken of Hemphill following his arrest entitled him to an inference that its use in evidence would have been favorable to him. He cites several cases, including *State v. Brown*, which involved destruction of a blood specimen approximately a week after it was ob-

tained, without an opportunity for analysis by the defendant. 337 N.W.2d 507, 509 (Iowa 1983).

The *Brown* case, and the others cited by Hemphill, are clearly distinguishable. In the present case, the arrest was made on January 22, 1983. The tape was not erased by the Sheriff's Office until May 15, 1983. In the meantime, in February, the video tape had been viewed by both Hemphill and his attorney.

We believe the unavailability of the tape under these circumstances is a result of Hemphill's failure to properly provide for its preservation, not from any attempt to deprive him of the use of such evidence. He had adequate time and opportunity to preserve the video tape.

We find no basis for reversal.

AFFIRMED.