**Theron MONTGOMERY, Appellant,**

v.

**IOWA DISTRICT COURT FOR JONES COUNTY, Appellee.**

**No. 97–514.**

Supreme Court of Iowa.

Nov. 17, 1999.

Philip B. Mears of the Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Forrest Guddall, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, CADY, and ANDREASEN,* JJ.

PER CURIAM.

Theron Montgomery, an inmate at the Anamosa Men's Reformatory, received a disciplinary report charging him with assaulting another inmate, a class I violation. On May 10, 1995, he was found guilty of the charge by the disciplinary committee. The administrative law judge (ALJ), who served as chairman of the committee, imposed a number of sanctions, including the loss of 120 days of good conduct time.

Montgomery then pursued his right of administrative appeal. The warden of the reformatory affirmed the decision and the sanctions on May 23. Montgomery's appeal to the Director (Director) of the Iowa Department of Corrections (IDOC) was denied on July 20.

Montgomery then sought postconviction relief under chapter 822 of the Iowa Code.

---

* Senior judge assigned by order pursuant to     Iowa Code section 602 .9206 (1999).

This chapter specifically permits an inmate to challenge the unlawful forfeiture of good conduct time. . Iowa Code § 822.2(6) (1995).

Following hearing on the application for postconviction relief, the district court dismissed the application. Montgomery then obtained a writ of certiorari in this court. The issue raised on appeal is whether the sanction of the loss of 120 days of good conduct time is an illegal violation of IDOC policy and procedures. This claim is reviewed by us for errors at law. *Harpster v. State*, 569 N.W.2d 594, 596 (Iowa 1997).

Upon our review of the record and the briefs filed by counsel, we find the sanction imposed was not illegal or in violation of IDOC policy and procedures. We now annul the writ.

### I. Good Conduct Time and Its Loss or Forfeiture.

■ Iowa Code chapter 903A provides for the reduction of an inmate's sentence for good conduct time, the loss or forfeiture of good conduct credit, and the development of policies and procedures. Iowa Code §§ 903A.2–.4. Montgomery is eligible for a reduction of sentence of one day for each day of good conduct time. *Id.* § 903A.2. Upon finding an inmate has violated an institutional rule, the ALJ has discretion within the guidelines to determine the amount of good time earned that should be forfeited based on the severity of the violation. *Id.* § 903A.3. The Director of the IDOC is required to develop policy and procedural rules to implement the statutory provisions relating to good conduct time and the loss or forfeiture of good conduct time. *Id.* § 903A.4.

The Director adopted a guideline that included policy statements, rules, and procedures. IDOC Policy No. IN–V–36 (effective April 1984). It provides in part:

> Each inmate serving a sentence for an OFFENSE COMMITTED ON OR AFTER JULY 1, 1983, may forfeit up to sixteen (16) good conduct time for each Class I violation, except as noted below. The loss of good conduct time shall be determined by the Administrative Law Judge and shall be based upon the Administrative Law Judge's view of the seriousness of the misconduct. (Section 903A)

> Normally, violations of Class I rules shall result in not more than sixteen (16) days good conduct time for any single offense. For the fifth and each subsequent violation, the warden shall have authority, with the approval of the Director of Institutions, to deprive the inmate of any portion or all of the good time that may have been earned up to the date of the violation.

> . . . .

> Whenever an inmate is found guilty of a Class I infraction which is not suspended, the inmate shall lose the amount of good time consistent with the statute and this policy. The supervisor of records for the institution shall be responsible for computing the loss of time within a reasonable amount of time after the Disciplinary Committee finds an inmate guilty of a Class I infraction, the inmate's new discharge date, and will inform the inmate of the loss of time and new discharge date.

*Id.* at IIC2a, 3. This was Montgomery's fifth or subsequent violation and since his offense was committed after July 1, 1983, he was subject to this policy.

### II. Time Adjustment Record.

The IDOC developed a form identified as a "time adjustment record." This form was used by the department to notify inmates of the loss of good conduct time and the new discharge date. The form stated:

> FOR FIFTH OR MORE VIOLATION, OR ESCAPE, OR ATTEMPT TO ESCAPE, APPROVAL OF WARDEN AND CORRECTIONS DIRECTOR TO TAKE MORE THAN 16 DAYS GOOD TIME.

Below this statement there were two signature lines for the warden and the Director.

This form, showing 120 days good conduct time taken, dated May 31, was given to Montgomery to inform him of the loss of time and his new discharge date. The line for the Director was signed by the Deputy Director, and there was no signature on the line for the warden. This document is a record-keeping document, not a statement of department policy. *Cf. Hemphill v. Iowa Dep't of Transp.,* 379 N.W.2d 907, 908 (Iowa 1986) (failure to complete affidavit and notary form did not vitiate implied consent procedure when they were not otherwise statutorily required).

III. Legality of Sanction.

Montgomery argues that the warden's failure to sign the time adjustment record prohibits the taking of more than sixteen days good conduct time.

In our review of the record, we note the warden notified Montgomery on May 23, 1995 that his administrative appeal was denied and the committee decision would be imposed. It is clear that both the warden and the Director approved the ALJ sanction imposed against Montgomery resulting in the loss of 120 days good time. The district court in its ruling found the failure of the warden to sign the time adjustment record was not sufficient cause to reduce the sanctions to a loss of sixteen days of good time. The court concluded it was fairly obvious that the warden's failure to sign the form was an oversight and nothing more.

We conclude both the warden and Director approved the sanction imposed by the ALJ. The warden had approved the sanction on May 23 prior to the notification of sanctions given to Montgomery in the time adjustment record. Therefore, his signature on the form was not required. The Director approved the sanction both on the time adjustment record form and by denial of Montgomery's appeal. Nei-

ther the statutes of Iowa nor the IDOC disciplinary policy and procedures require the signatures of the warden and the Director on the time adjustment record form. What is required under the statute and the guideline is the approval of both the warden and the Director.

**WRIT ANNULLED.**